DERICK C. LANSING and others *vs.* DAVID RUSSELL and others.

In a suit in chancery to set aside two certain deeds, purporting to have been made by the same grantor, on the same day, a feigned issue was awarded by the chancellor to determine the validity of said deeds, and the jury found in favor of the validity of both deeds. The chancellor granted a new trial, so far as related to one of the deeds, and denied it as to the other. The jury, on the second trial, having found against the validity of the deed the authenticity of which was contested before them, *it was held* that on a motion by the defendants to set aside the last verdict, the court would not entertain a cross-motion on the part of the plaintiff to set aside the other deed which had been established on the first trial.

A bill filed to set aside a deed, being dismissed upon the merits, operates as a confirmation of the deed, and is conclusive upon the parties and all claiming under them.

The object of a feigned issue is to satisfy the conscience of the court. If upon the whole case it appears that no error has been committed by the presiding judge, either in admitting or excluding evidence, or in his charge to the jury, prejudicial to the complaining party, a new trial will not be granted.

The court in reviewing the trial of a feigned issue, are governed by the rules which prevail on motions for a new trial on a case.

Exceptions cannot be taken to a mere commentary on the evidence, by a judge in his charge to the jury.

A deed in the nature of a testamentary instrument, purporting to be signed by his mark by the grantor, who at the date of the deed was in his 90th year, partly deaf and nearly blind, and who was laboring under a disease which rendered him nearly helpless, and which deed was in the hand-writing of the husband of the grantee, and witnessed only by her son, and which recited in the body of it that the object of the deed was to place the grantee upon a footing of equality with the other children of the grantor, requires for its support something more than the proof of the subscribing witness that he saw it executed by the grantor.

There is a presumption against an act done by the agency of the party benefited, which calls for explanatory circumstances.

IN EQUITY.] The plaintiffs filed their bill in 1844, in the late court of chancery, before the chancellor, and the cause was transferred to the supreme court by force of the constitution of 1846, and the judiciary act of 1847. The object of the bill was to set aside two deeds purporting to have been executed by the late Cornelius Lansing, on the 30th November, 1841, one to David Russell of a farm in Salem, and the other to Alida the wife

of the said David, of a farm in Lansingburgh, being a part of the homestead of the said Cornelius.

The last will and testament of the said Cornelius Lansing, under which all the parties to this suit derived some interest, was duly executed on the 24th of September, 1836, and a codicil thereto on the 10th of July, 1837. It was admitted that at the time these instruments were executed, the testator was of sound disposing mind and memory, and in all respects competent to make a will. The testator died in April, 1842. The deeds in question purported to have been signed by Mr. Lansing, by his mark; and the bill charged that the said marks were not affixed to the signature by the said Cornelius Lansing; and if such marks were made by his hand, it was by compulsion and by his hand being held and guided by said David Russell or some other person, and by mere contrivance, without the voluntary act or consent of said Cornelius, and that the said Cornelius had not power of mind to comprehend the contents or effect thereof, and the said pretended conveyances were not executed from his own motion and his own free will, but by the suggestion, compulsion or contrivance of the said David Russell, or some person or persons by his procurement. And it prayed that the said David Russell and Alida his wife might be decreed to deliver up the said pretended conveyances to be cancelled; and that an issue or issues might be directed, to try whether the said Cornelius was of sound mind, and mentally capable of executing the said pretended conveyances; and whether the same were duly executed by him; and whether they were valid and effectual and operative conveyances.

After the cause was put at issue by a replication to the defendant's answer, the chancellor, by an order of the 2d of April, 1845, awarded the following issues. I. Was Cornelius Lansing legally incompetent, by reason of unsoundness of mind or mental incapacity, to execute a deed, at the time when the two deeds in question purport to have been executed? II. Were the said deeds falsely made, forged and counterfeited, or was either of them falsely made, forged and counterfeited? III. Were the signatures and marks purporting to be made to said deeds by said Cornelius Lansing, or was the signature or mark to either

of said deeds, procured and obtained by compulsion or by the fraudulent management and imposition of the said David Russell and Alida his wife, or either of them, or by some other person by the procurement of said David Russell and Alida his wife, or one of them?

These issues were tried by order of the court of chancery, at the Dutchess circuit, in November, 1845, when the jury found a verdict in favor of the defendants, on all the said issues. The complainants made a case, and applied to the late court of chancery for a new trial, and after argument that court made an order as of the 10th August, 1847, denying the motion for a new trial, so far as related to the deed of the Salem farm; and granting a new trial, so far as related to the deed to Alida Russell of the Lansingburgh farm. (*See the case*, 3 *Barb. Ch. Rep.* 325.)

In pursuance of the latter order, the issues as to the deed to Mrs. Russell were tried at the Saratoga circuit in June, 1850, when the jury found for the defendants on the two first issues, and for the plaintiff on the last issue. The defendants made a case, containing the testimony and proceedings on the trial of said issues; and upon that case, and the former case made by the plaintiffs, they asked this court for an order declaring both deeds valid, and dismissing the bill with costs; and if unsuccessful in that motion, they then asked for an order establishing the deed to David Russell, of the Salem farm, and the deed to Alida Russell except as to the matter of the third issue, and as to that matter they asked for a new trial. The plaintiffs, on the other hand resisted the several claims of the defendants, and asked for a decree as to both deeds, according to the prayer of the bill.

*John Van Buren*, for the plaintiffs. The plaintiffs are entitled to a decree setting aside the deed to Mr. and Mrs. Russell, which are set forth in the pleadings in the case. The issues awarded by the court of chancery were intended to inform the conscience of the court, and the court have power to direct a decree in conformity to the verdicts, or in opposition to them, as shall be just. (2 *Smith's Ch. Pr.* 92 *to* 98, 3d ed. *Stace* v.

Lansing v. Russell.

*Mabbet*, 2 *Ves. sen.* 552.   *Clewe* v. *Gascoigne*, *Ambl.* 323. *Winchelsea* v. *Wauchope*, 3 *Russ.* 441.   *Armstrong* v. *Armstrong*, 3 *M. & K.* 45.)   The testimony referred to in the subjoined propositions, is found in the case as settled by Justice Hand.   I. The relations between David Russell and Cornelius Lansing, and the circumstances under which these deeds are claimed to have been executed, are such as to throw upon Mr. and Mrs. Russell the burden of a full and satisfactory explanation.   (*Sears* v. *Shafer*, 1 *Barb. S. C. Rep.* 408.   *Brice* v. *Brice*, 5 *Id.* 534.   *Story's Eq. Jur.* § 234 *to* 238, 9.)   (1.) At the date of these deeds, (Nov. 30, 1841,) the grantor was in the 90th year of his age; he was partly deaf and almost entirely blind; his food was cut up for him and fed to him; he was dressed and led from room to room by attendants; two single women slept in the same room with him; he was afflicted with a cancer, which required the administration of severe remedies and the strongest narcotics, and which terminated his life on the 23d of April, 1842, (less than five months after the date of the alledged deeds.)   (2.) David Russell was a son-in-law of the grantor and a counsellor at law, who had transacted professional business for the grantor, and in whom he had placed confidence.   Both deeds, with the exception of the two crosses, and the name of the witness, are admitted to have been prepared and drawn by David Russell, and no instructions to do so are proved in the case. His son is the subscribing witness.   (3.) The deeds were kept secret from every one but David Russell and his son, from the date of their execution until the 12th of May, 1843, when the deed to Russell was put on record, and the 24th of May, 1843, when the deed to Mrs. Russell was recorded.   (4.) The deeds were voluntary.   Whatever payments the defendants may claim to have proved in return for the sums loaned, were more than made good by the last will and testament of the grantor. But, as appears under another point, David Russell was indebted to Cornelius Lansing at the date of the alledged deeds, more than $10,000, after crediting Russell with the value of the Salem farm.   That to Alida Russell was claimed to be a pure gift. (5.) The chancellor treated this as a case where the burden of

explanation lay on the grantees.   He holds that while the execution of the deeds might be considered as proved, the defendants had not established to his satisfaction that the grantor understood their meaning and effect.

II. The defendants have wholly failed to explain this extraordinary transaction.   (1.) The testimony of Wm. A. Russell is unworthy of belief.   His story is improbable, if not impossible, in itself.   He is deeply interested.   He is contradicted by Jane Giles, and by Hannah Brust.   His testimony as to his father's guiding Lansing's hand, is in direct conflict with his answer, and made to counteract the plaintiff's testimony.   His statement that he communicated to his mother the fact of the execution of this deed to her, at or about the time of its date, is shown to be false by the testimony of Mr. Allen, her son-in-law, and Hannah Brust, who prove his mother did not know of the deed to her during Cornelius Lansing's life, and after his will was read to her.   (*Burtus* v. *Tisdall*, 4 *Barb.* 571.)   (2.) There is no other explanatory testimony given by the defendants.   Solomon W. Russell, the brother of David, who testified on the first trial to the declarations of Cornelius Lansing after the alledged execution of the deeds, and to several payments by David Russell to Lansing before their execution, was not called on the second trial.   The opinion of the chancellor upon his testimony probably rendered it unnecessary.

III. The testimony leaves no room to doubt that Cornelius Lansing never understandingly executed the deeds in question. (1.) The testimony of those acquainted with Mr. Lansing at the time the deeds bear date, and experts in hand-writing, shows that in all probability he could not have made the marks in question. (2 *Cowen & Hill's Notes, p.* 1323, *n.* 913.  1 *Greenl. Ev.* §§ 440, 580, *n.* 4.   *Lewis* v. *Sapie*, 1 *Moody & Mal.* 39.   *George* v. *Survey, Id.* 516.   *Nelius* v. *Brickets*, 1 *Hayw.* 19.   *Jackson* v. *Van Dusen*, 5 *John.* 144.   *Goodtitle ex dem. Revet*, v. *Braham*, 4 *T. R.* 497.   *Hammond's case*, 2 *Greenl.* 33.   *Moody* v. *Rowell*, 17 *Pick.* 490.   *Commonwealth* v. *Carey*, 2 *Id.* 47. *Lyon* v. *Lyman*, 9 *Cowen*, 55.   *Hubby* v. *Van Horne*, 7 *Serg. & R.* 185.   *Lodge* v. *Phipher*, 11 *Id.* 333.)   (2.) He wrote his

Lansing *v.* Russell.

name instead of making his mark, at and after the date of these deeds. (3.) The will of Mr. Lansing was made with kind feelings towards Russell; it expressed his deliberate purpose as to the disposition of his estate, and the whole plan of this will is changed by these deeds. (4.) The sums loaned by Lansing to Russell, amounted in 1836 to near $30,000. The only payment proved, was one of $700 to $800, in 1833, 1834 or 1835, sworn to by James Stevenson. (5.) The acts of David Russell and Cornelius Lansing, in regard to both farms, are irreconcilable with the grounds assumed by the defendants, and with the existence of these deeds, at the time they bear date. (6.) The deeds could not have been executed and read to the grantor, at the time of their date, loud enough for him to hear, without the knowledge of Jane Giles or Hannah Brust. (7.) Lansing, in his lifetime, repeatedly refused to convey the Salem farm to Russell, and the conveyance of the homestead he never pretended to ask. (8.) The circumstances of this case make the inference of fraud irresistible. The mental and physical condition of the grantor, who for three years previously had felt incompetent to transact business, and had delivered over his bonds, notes, leases, and other papers, to his son-in-law, Alvord, and with the aid of a disinterested professional adviser, five years before, had made his will; the fact that Russell was an expert lawyer; the secrecy; the attempt to revoke a will made in sound health, and deliberately, by a deed, with a single witness; the character of this witness; the neglect to call in as witnesses either Hannah Brust, William Lansing, or Jane Giles—all three alledged to have been at hand, and Jane Giles already a witness to the codicil of the testator's will; the preparation of the deeds by Russell, and the concealment of them till the partition suit made their publication necessary.

IV. A new trial ought not to be granted to try the validity of the deed to Alida Russell. (1.) The judge correctly determined to permit the plaintiffs to prove the facts in regard to the deed to David Russell, of the Salem property. As an independent fraud or forgery at the same period with the Lansingburg deed, and by the same parties, it would have been admissible.

(1 *Cowen & Hill's Notes*, 463, 4, 5.    2 *John. Ch.* 198.    4 *Car. &
Payne*, 444.    *Benham* v. *Cary*, 11 *Wend.* 83.    *Cary* v. *Ho-
tailing*, 1 *Hill*, 311.)    As a part of the same transaction it was
necessarily inquirable into on this trial.    The verdict on the
former trial, and refusal of the chancellor to order a new trial,
constituted no estoppel.    They could not strictly have been given
in evidence, at the time.    (*C. & Hill's Notes*, 1070.    1 *Barb. Ch.
Pr.* 460.    *Armstrong* v. *Armstrong*, 3 *M. & K.* 45.    18 *Wend.*
377.    1 *Phil. Ev.* 323.)    In no event would Mrs. Russell have
been estopped by the verdict on the deed to Mr. Russell. Estop-
pels must be mutual.    The verdict of the jury in this case hav-
ing been in favor of the defendants, on the issue of forgery, they
have sustained no injury by the ruling of the court, in admitting
testimony on that point.    (2.) A court of equity will not grant
a new trial on a technical error of the judge in a trial at law of
an issue awarded by the court.    (*Bissell* v. *Johnson*, 1 *Green's
Ch. Rep.* 154.    *Gurney et al.* v. *Langland*, 5 *B. & Ald.* 330.)

*S. Stevens*, for the defendants.    Upon the facts and the find-
ing of the jury, upon both trials, the defendants are entitled to
a decree declaring both deeds valid, and dismissing the bill with
costs.    I.  There is no question as to the deed to David Russell.
The verdict establishing the validity of that deed has been
affirmed by the court of chancery, and is conclusive upon the
parties.    II.  The validity of the deed to Alida Russell has been
fully established by one verdict, and two out of three of the alle-
gations against its validity, have been found in favor of its valid-
ity by a second jury; and the third issue relating to the validity
of that deed, has been found by the jury against the defendants
without any pretense of evidence to justify that finding.    (1.)
That issue was, whether the signature of Cornelius Lansing to
that deed, was procured and obtained by compulsion or by the
fraudulent management and imposition of the said David Rus-
sell and Alida his wife, or either of them, or by some other per-
son by the procurement of said David Russell and Alida his wife,
or one of them.    (2.) There is no pretense of evidence, that Mrs.
Russell or any person by her procurement, obtained the signa-

ture to this deed by compulsion or any fraudulent management or imposition. (3.) There is no evidence that David Russell, or any person by his procurement, obtained the signature to that deed by compulsion or any fraudulent management or imposition. The presumption of law is that he did not. The law presumes every man to be guiltless of fraud, free from all guile ; and this presumption will prevail and protect those attempted to be charged with fraud, until it is repelled by clear and unequivocal evidence of guilt. And this evidence must consist of either direct proof of fraud, or proof of such circumstances as are necessarily inconsistent with the innocence of the party accused. (*Kinlock* v. *Palmer*, 1 *Mills' S. Car. Rep.* 224. *Fort* v. *Mestayer*, 10 *Martin*, 349. *Livingworth* v. *Fox*, 2 *Bay*, 520, 521. *Williams* v. *E. India Co.* 3 *East*, 192. *Thurtell* v. *Beaumont*, 1 *Bing.* 339 ; *S. C.* 8 *Com. L. Rep.* 337.) In addition to this presumption we have clear evidence, sustained by the verdicts of two juries, that the grantor was of sound mind, and capable of understanding what he did ; and the testimony of one intelligent witness, who was a witness to the execution of the deed, that the grantor freely and voluntarily, and at his own motion, executed the deed with a full knowledge and understanding of its contents, purport and effect. There is no evidence on the part of the complainants, sufficient to countervail this presumption of law, and this strong and unequivocal evidence in favor of the innocence of the defendant David Russell. There is no proof that Mr. Russell made or attempted to make any misrepresentations to the grantor. Mr. Russell claimed that he paid, or nearly paid, the grantor for all his advances, and upon that ground claimed a reconveyance of the Salem farm. He proved that he had paid him large sums of money prior to Nov. 1837, and that in October or November, 1837, he paid him $2700, and took from the decedent a receipt in writing, that only $500 was in arrear. In corroboration of this fact, the decedent on the 23d May, 1838, delivered over to Mr. Alvord all his demands, including demands against his other relatives, but none against Russell. Also the leases held by him, but no leases from the tenants on the Salem farm. Mr. Allen testifies, that in Nov.

1837, the decedent directed him to collect no more rents on that farm, but to let Mr. Russell have the management of it. And Mr. Russell did, that fall, lease the whole farm to different tenants, in his own name, and soon after made large and expensive improvements. Under these circumstances Mr. Russell's claiming a reconveyance of the farm, was simply and only what he had a right to do. Besides, the declaration of the grantor, in the deed to his daughter, of what its object was, is cogent proof that he had been repaid his advances, when it is proved that he knew the contents of this deed. III. The issues awarded by the court of chancery, being solely for the purpose of informing the conscience of the court, the court may without ordering a third trial grant the relief sought by this branch of the motion, notwithstanding the verdict on the third issue, when it is most apparent that that verdict is not warranted by the evidence. If the court should by possibility be against the defendants upon the first point, then we submit that the defendants are entitled to a decree, establishing the deed to D. Russell, and also the deed to Alida Russell, except as to the matter of the third issue, and as to that issue the defendants are entitled to a new trial. (1.) As to the deed to D. Russell, there is no question of its validity. (2.) As to the deed to Alida Russell, its validity has been established by the verdict of one jury, and by the verdict of a second jury, except as to the question involved in the third issue. There is, therefore, no ground or reason for keeping the litigation open as to the first and second issues on that deed, and the new trial should be awarded solely as to the third issue. The defendants should not be put to the expense of bringing the first and second issues to trial a third time, when two juries have found in their favor as to those issues. (3.) A new trial should be granted as to the third issue.

*By the Court*, WILLARD, P. J. I. The verdict of the jury on the first trial having been in favor of the defendants on all the issues, and the chancellor having refused to grant a new trial, so far as the deed to David Russell, of the Salem farm, is concerned, this court cannot regularly, while that order is in

force, entertain a motion to set aside that deed. Had the chancellor continued in office, he certainly would not have listened to a motion of this kind. On a proper state of facts, he might have permitted a rehearing, if the application for that purpose had been made in time. This court, having succeeded to the jurisdiction of the late court of chancery, should not lightly and capriciously depart from the former practice. Whatever might be the power of the court over the verdict, and conceding that it can disregard the verdict and grant relief against the finding of the jury, it is believed no case can be found where it will disregard its own solemn decision made upon a full argument of the cause.

Although much of the evidence on the last trial would have been applicable to a trial of the issues as to both deeds, yet the last verdict had reference to the deed to Alida Russell, alone. The testimony taken on the trial of that issue does not lay the foundation for a motion to vacate another deed, upon the validity of which the jury have expressed no opinion. The question with respect to the validity of the deed to Mr. Russell, for the Salem farm, was disposed of by the chancellor, and it cannot be revived in this way, if it can be at all.

II. The motion of the defendants to declare both deeds valid cannot be granted. Even if both verdicts had been in favor of the defendants, they would not have been entitled, under the pleadings, to any affirmative relief. The dismissal of the bill with costs, is all they pray for in their answer, and is the highest relief that the practice of the court justifies. The effect indeed of such decree would indirectly affirm the validity of the deeds, and would probably be a bar to another action for the same premises, either at law or in equity.(a) It would require a very strong case to induce the court to disregard the verdict of a jury and grant a decree in opposition thereto.

III. The important question is whether there is a sufficient ground disclosed in the case to call for the interference of the court with the verdict for the plaintiffs on the last issue.

(a) This point was expressly decided by the court of appeals in *Burhans* v. *Van Zandt*, January term, 1853, after this opinion was written.

The present controversy being between persons standing in the same relation to the testator, the plaintiffs claiming under a will and the defendants under a deed from the same testator, alledged to have been made after the will, it is not controlled by the English practice by which they never bind the inheritance by a single verdict, on an issue *devisavit vel non.* With them the heir is the favored party, and the presumption is against any disposition of the estate which interferes with the regular course of descent. In the present case the law makes no presumption in favor of the grantee, over the devisee. The cause must therefore be determined by the evidence. The court is not bound to grant a new trial, because the verdict on the former trial was the other way. The result of the cause does not depend upon the number of successive verdicts which may be given.

As the object of a feigned issue is to satisfy the conscience of the court, a new trial should not be ordered if the trial has been fairly conducted, and the conclusion of the jury is the same as the court itself would have come to, upon the evidence in the cause. It is quite clear that in reviewing such a case, the court is not bound by the same rules that prevail on bills of exceptions. In the latter case the object is to correct the errors of the judge at nisi prius in matters of law, which are prejudicial to the party excepting. No more of the testimony is set forth than is sufficient to show the materiality of the decision complained of. But in a motion for a new trial on a case, and especially when the object is to set aside a verdict on a feigned issue, the whole evidence is set forth at large. If the court can see, from the whole case, that no error has been committed by the presiding judge, either in admitting or excluding evidence, or in his charge to the jury, prejudicial to the complaining party, and if upon the whole case the verdict appears to be right, even though some erroneous decisions may have been made, the court will not grant a new trial. (*See Winchelsea* v. *Wauchope,* 3 *Russell,* 441; *Gurney* v. *Langlands,* 5 *Barn. & Ald.* 330.)

According to the well settled rules of law the court never sets aside a verdict because it is against the weight of evidence, un-

less there is a clear and decided preponderance of evidence against the verdict. ( *Ward* v. *Center,* 3 *John.* 271. *Douglass* v. *Toucey,* 2 *Wend.* 352, 356. *Eaton* v. *Benton,* 2 *Hill,* 578. *Hammond* v. *Wadhams,* 5 *Mass. Rep.* 353.)

Much of the evidence alledged to have been improperly admitted bore upon the issue of forgery alone. As the jury found that issue in favor of the defendants, it is not perceived how they were prejudiced by it. Both deeds were made at the same time, and are alledged to have been made by the same grantor, or to have been forged by the same defendant. On the trial of an issue as to the forgery of the one, evidence tending to show the forgery of either was admissible. The rule is the same in civil actions that prevails on the trial of indictments for forgery, where it is every day's practice to receive evidence of the prisoner's having uttered other forged notes of the same kind. (1 *Phil. Ev.* 179. *Cowen & Hill's Notes, p.* 464. *Cary* v. *Hotailing,* 1 *Hill,* 311. *Olmsted* v. *The Same, Id.* 317.)

The evidence that was excluded was immaterial to the issue which the jury found against the defendants. Had it been admitted the verdict would have been the same.

The general scope of the charge was certainly favorable to the defendants on the two first issues, and the verdict was in their favor. On the other issues the judge commented at large upon the evidence, and submitted it to the jury without any controlling direction. It is well settled that an exception cannot be taken to a mere commentary on the evidence. The jury listen to the remarks of the court upon the testimony, with the deference due to learning and experience, but with a perfect understanding that they must decide upon matters of fact according to their own convictions. It is only when the judge has plainly misled the jury as to the tendency and effect of the evidence, or has given them some erroneous rule for their guidance in matters of law, that the court is required to interfere and award a new trial. I perceive nothing essentially wrong in this part of the charge, or in the refusal to charge as requested. The general tone of the charge was fair, and not cal-

culated to mislead. This will be manifest when we advert to some other features in the case.

The chancellor, in his opinion delivered on awarding a second trial of the issues as to the deed to Mrs. Russell, of the homestead, observes that under the circumstances of this case, and the situation in which Mrs. Lansing then was, the defendants were bound to show how the shares of the estate were to be made equal among the several children of the deceased, by the giving of that deed, and the chancellor expressed the opinion that the old gentleman did not understand the nature of that deed. The facts bearing upon this question were fairly submitted by the judge to the jury, and they were told that if no explanation had been given in accordance with the decision of the chancellor, they should find for the defendants. We may infer from the verdict that the explanations were not satisfactory. Here in my judgment is the stress of this case.

The testator had in 1836 made his last will and testament, which was republished with a codicil in July, 1837. The apparent object of the will was to divide the one half of the *income* of his large estate equally among his children during their lives, and the body of the estate among his grandchildren *per stirpes*, for ever. He was at that time of sound mind and memory, and confessedly competent to dispose of his estate by will. The evidence discloses that the will was in conformity to his often expressed opinions, and that he subsequently declined to make any alterations in it. The deed to Mrs. Russell of the homestead, now in question, purports to have been made on the 30th of November, 1841. It deranges the whole plan of the will, even if it be true that the testator had erroneously charged to the share of Mrs. Russell the sum of ten thousand dollars. It purports on its face to be a gratuity; and to be made for the purpose of placing the grantee upon the footing of equality with the other children of the grantor. It is wholly in the hand-writing of Mr. Russell, the husband of the grantee, and purports to be signed by the grantor with his mark, and was witnessed only by Wm. A. Russell, a son of the grantee, and grandson of the grantor. At the date of the instrument, the

grantor was in the ninetieth year of his age. He was partly deaf, and nearly blind. He was unable to cut up his food, or to dress himself, without help. He ate his food with his fingers when it was not fed to him by his attendants; and was led from room to room by them. He was afflicted with a cancer on his lip which at length ate into the inside of his cheek, and finally appeared on the outside, and occasioned his death. It was attended with constant, and at times, excruciating pain; and his physician administered to him henbane or morphine in quantities sufficient to produce stupor, and as often as the pain ensued. He expired on the 23d of April, 1842. Until the year 1838 Mr. Lansing managed his large estate himself. In that year he placed all his papers and business concerns in the hands of his son-in-law, Mr. Alvord, with instructions how to dispose of the income of his estate. From that time he transacted no kind of business, unless advised by Mr. Alvord, and occasionally by his son Jacob.

The jury have indeed found that Mr. Lansing on the 30th of Nov. 1841, had sufficient capacity to make a deed, and that the deed in question was not a forgery. But the circumstances of the case are such that some further explanation may fairly be required of Mr. Russell, besides the testimony of his son. The deed to Mrs. Russell is in the nature of a testamentary instrument. It alters the testator's will, in favor of the grantee, to the extent of the value of the homestead. Had this deed been a codicil, it could not have been upheld, without further proof, even if the statute did not require more than a single witness. An instrument prepared by the husband of the devisee and witnessed only by his son could never be established as the will of a testator in the then condition of Mr. Lansing, without proof of prior instructions, or evidence of some known and declared change of purpose in the testator, or some subsequent recognition of it by him. The presumption is always strong against an act done by the agency of the party benefited. By the civil law such act was absolutely defeated. (*Dig. lib.* 34, *tit.* 8. " *De eo quod quis sibi adscripsit in testamento.*") Our own law does not invalidate this act,

provided the intention can be fairly deduced from other circumstances. It calls, however, for more proof, than the proof of the *fact* of signing. The presumption is against the instrument. (*See Billinghurst* v. *Vickers*, 1 *Phil.* 187; *Parke* v. *Ollat*, 2 *Id.* 323; *Barton* v. *Robbins, note to Fawcett* v. *Jones*, 3 *Phil.* 456; *Ingraham* v. *Wyatt*, 1 *Hagg.* 382, 384; *Dodge* v. *Murk*, *Id.* 620; 2 *Paige*, 147.) Why were not the attendants of Mr. Lansing, one or both of them, called as witnesses to the deed? They were both in the house, and were better able to judge of his capacity than any other person. Why was not a disinterested scrivener employed to draw the deed and to superintend its execution? The omission of these precautions casts suspicion over the transaction. We look in vain in the case for any satisfactory explanation of this departure from the course which ordinary prudence would have dictated.

Conceding that Mr. Lansing had sufficient capacity at that time by the aid of his friends to make a deed or a will, still it must be admitted that he was in a condition in which he might easily have been made the victim of fraud or undue influence. He had arrived at an age when we are told "all is labor and sorrow," and when even "the grasshopper is a burden." His will could be more readily controlled, his fears excited and his free agency destroyed, than when in health. The acts of the aged, done in moments of helplessness and decrepitude, especially when conflicting with known opinions deliberately formed in health, should be watched with jealousy.

It was not necessary to impute either perjury or forgery to the witness William A. Russell. The surrounding circumstances called for some further evidence on the part of the defendants than that witness disclosed. These circumstances were sufficient, without explanation, to raise the presumption, either that the grantor did not understand the deed, or that he was induced to assent to it by undue influence. What passed between Mr. Russell and Mr. Lansing, before the witness came into the room, could not be known to him. An influence, therefore, may have been exerted of which he was ignorant.

But supposing the testimony of Wm. A. Russell covers the

Lansing *v.* Russell.

whole case, the circumstances already alluded to, and others which will be noticed, are inconsistent with the hypothesis that the old gentleman understood the deed as a conveyance of the homestead to Mrs. Russell. If the transaction actually occurred as the witness relates it, why was it not announced to the other heirs, before the death of the testator, or at least at the time when the will was opened after the funeral? Mrs. Russell was present at that time, and, according to the testimony of the witness, knew of the existence of the deed. Why did she not mention it then, or at least to her son-in-law Mr. Allen, with whom she returned to Salem? Why did Mr. Russell settle with the estate for his share and keep the relatives in ignorance of a fact so important as the deed in question?

These circumstances and numerous others made it a question for the jury, whether the deed was fairly obtained or not. It was for them to say, whether the presumptions against its validity were countervailed by the single oath of William A. Russell. They had a right, perhaps, to find either way. They found against the deed, and we cannot disturb their verdict as one against evidence, or even against the weight of evidence. Nor is the decision of the jury against the deed now in question inconsistent with that of the former jury and of the chancellor in upholding the deed to Mrs. Russell of the Salem farm. If the verdict had been adverse to the deed on the issues of incapacity or forgery, it is obvious that the same evidence which led to such result, must·have been alike·fatal to both deeds. If Mr. Lansing had not sufficient capacity to execute the one, he could not have executed the other, as both were made at the same time. If the one was a forgery the other was a forgery also. But in truth the two deeds rest for their support on different grounds. That of the Salem farm was an ordinary conveyance, and might be executed by Mr. Lansing, without disturbing the arrangements of his will. The idea of such a deed was by no means a novelty, for it had often been the subject of conversation between the parties. Although the evidence of the payment of the consideration by Mr. Russell is slight, yet there was some evidence upon which the jury might lawfully rest, and there were strong

probabilities in its favor.   It was a common business affair.   But with respect to the other deed, the presumptions are all the other way.   It was unusual in its form, and complicated in its structure.   It disturbed the harmony of the will.   It was never recognized by the testator in any subsequent conversation, nor was its intended execution the subject of any previous remark by him.   The recited motive for its execution has not been proved by any evidence out of the deed itself.   And it is attended with all the circumstances of doubt and suspicion which have already been sufficiently dwelt upon.

On the whole, I think the motion to set aside the verdict and for a new trial on the last issue should be denied.

There must be a decree dismissing the bill as to the Salem farm, and setting aside the deed of the Lansingburgh homestead.

Neither party to have costs as against the other.

[FRANKLIN GENERAL TERM, July 5, 1852.   *Willard, Hand* and *Cady*, Justices. C. L. ALLEN, J. being related to some of the parties, took no part in the decision.]