## ROSSMAN et al. v. SEAVER et al.

(Supreme Court, Appellate Division, First Department. June 9, 1899.)

CORPORATIONS—INSOLVENCY—PREFERENCE—SUFFERING JUDGMENT.

The president of an insolvent corporation, which owed his cousin a large sum, attempted to assign to the latter certain accounts to secure his note and an additional loan then made in consideration thereof, but, learning this would be invalid, caused the note to be split up into smaller ones, thus permitting the payee to obtain judgment on two days' summons, and insisted he was going to protect his cousin. The payee assigned the notes to a New Jersey resident, who, within 30 days from their date, sued thereon, and the president abstracted the summons, and kept them secret from the other officers. Proceedings were taken in a leisurely manner to have a receiver appointed, but the appointment was not made until after judgments were obtained, and executions issued. *Held*, that the judgments were "suffered" by the officer with intent to prefer, within Laws 1892, c. 688 (Stock Corporation Law) § 48, prohibiting suffering of judgment with intent to prefer by an officer of an insolvent corporation.

Appeal from special term, New York county.

Action by Robert Rossman and others against Lewis M. Seaver and others. There was a judgment for plaintiffs (51 N. Y. Supp. 91), and defendants appeal. Affirmed.

Argued before McLAUGHLIN, PATTERSON, O'BRIEN, and IN-GRAHAM, JJ.

Abram Kling, for appellants.

Chas. E. Rushmore, for respondents.

INGRAHAM, J. The action was brought to set aside five judgments and executions issued thereon, entered in actions brought by the defendant Seaver on five promissory notes executed by the defendants Kirkland, Andrews & Co., a corporation. The action was based upon section 48 of chapter 688 of the Laws of 1892 (the stock corporation law), and the court below found that the judgments sought to be set aside were prohibited by that section. The appellants base their right to reverse these judgments upon the ground that the evidence did not justify the finding of the court that the judgments were within the prohibition of this statute. Section 48 of the stock corporation law, in question, provides that "no judgment suffered, lien created or security given by it or by any officer, director or stockholder, when the corporation is insolvent, or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation, shall be valid." The evidence clearly established that this corporation against whom these judgments were recovered was at the time these judgments were obtained, and for at least two years prior thereto, insolvent, and that these judgments thus obtained resulted in giving a preference to the judgment creditor over other creditors of the corporation. The only question is whether the judgments were "suffered" by the corporation, or any officer, director, or stockholder thereof, with the intent of giving a preference to this particular creditor. The notes upon which these judgments were obtained were given by the corporation to one Hermon L. Ensign, and were transferred by Ensign to the judgment creditor, who resided in New Jersey, for the purpose of securing a short summons in the city court. Hermon L. Ensign, the holder of these notes, was a relative of Charles E. Ensign, the president of the corporation. This corporation had three directors, Charles E. Ensign, Edson H. Andrews, and Daniel Forster. Homer F. Andrews was the secretary. Some time in January, 1897, an examination of the affairs of the company was made, and at that time the secretary reported to the president that the affairs of the company were looking very badly, and that he could not see how the corporation could pull through, as it owed about $15,000 more than it could pay. At that time the corporation was indebted to Mr. H. L. Ensign upon a certain promissory note for over $5,000 for money loaned. After this investigation, it was considered that the company might pull through if they could obtain a loan of $3,000. C. E. Ensign suggested that, if the two Andrewses would each contribute $500, he would also contribute that sum, and would secure from his cousin, H. L. Ensign, $1,500, making $3,000, the desired amount. This arrangement was agreed to, and an application was made to H. L. Ensign to advance to the corporation $1,500, which he agreed to do if the company would give him demand paper for all he claimed, and would assign accounts to him to secure him;

and it was in furtherance of this understanding that H. L. Ensign advanced $1,200, which, with $300 interest due him, made $1,500, and at the same time received for the money thus advanced, and for the note of the company held by him, five notes in the aggregation of $7,700, four of which were drawn for $1,625 each, and the other for $1,200, payable on demand. These notes were all dated February 16, 1897. At a meeting of the directors of the company in February, 1897, the directors of the corporation passed a resolution assigning and transferring to H. L. Ensign, as collateral security for the payment of the company's indebtedness to him, certain claims and demands due to the company, aggregating the sum of $5,199.66. There was evidence offered on the part of the plaintiff tending to show that C. E. Ensign, the president of the company, insisted upon splitting up these notes in small amounts, so as to protect H. L. Ensign for the loan he had made to the company; and that the secretary of the company protested against giving him a preference on account of these old notes, as the other creditors of the corporation had put in their money in good faith. The president said: "That does not make any difference. I am going to protect my cousin." The secretary told the president that to transfer these accounts to protect H. L. Ensign would be taking an undue advantage of the other creditors. A resolution was passed by the board of directors to transfer these accounts, but which does not seem to have been carried out. The president in the meantime had advice that such a transfer would be invalid, and he subsequently told the secretary that H. L. Ensign had to be protected, but that he doubted if that other thing (meaning the transfer of the accounts) would hold good anyhow. The new loan to the company by H. L. Ensign appears to have been made about the 1st of March, 1897, and the demand notes, dated February 19, 1897, were delivered to Ensign about that time. Soon after that, H. L. Ensign transferred these notes to the defendant Seaver, who, on the 20th day of March, 1897, obtained an order in the city court authorizing the issuance of short summons upon these notes, and on that day commenced five actions to recover from the corporation the amount of the several demand notes given. The summonses and complaints in these five actions were, on Saturday, the 20th day of March, 1897, served upon the defendant corporation, and the plaintiffs would be entitled to enter judgment on Wednesday, March 24th. On that day judgment in each of the five actions was entered against the corporation, and executions duly issued, and levy made upon its property. On the day on which the secretary was served with the summons and complaints in these actions, C. E. Ensign, the president of the corporation, took the summonses and complaints away with him. On the same day, in a conversation between C. E. Ensign and a lawyer, who had been sent for by Andrews, the lawyer said that the proper thing would be to have a receiver appointed, and get the thing straightened out, so that everything would be in a proper form, and right. C. E. Ensign then said to the secretary: "Don't say one word about this to anybody. Don't say a word about it to our vice president, E. H. Andrews. It will ruin our credit and everything. Don't say a word about it. We'll have

it all fixed up Monday or Tuesday." E. L. Andrews and C. E. Ensign owned almost all the stock of the company. Subsequently Andrews, the secretary of the corporation, asked Ensign for the papers he had taken away from him, and he answered that he did not know where they were. Proceedings were taken to have a receiver appointed, and the corporation dissolved. The petition and schedule for the appointment of the receiver for the corporation were verified on the 25th of March, 1897, the day after the judgments were entered; and on the 26th of March, 1897, an order was made appointing a receiver of the property of the corporation. On the 28th of April, 1897, an order was entered upon consent of the attorneys in the actions in which the judgments were obtained, and on motion of the attorney for the receiver, directing the sheriff of the city and county of New York to surrender the possession of the said property levied upon by him pursuant to the five executions issued to him on the 24th day of March, 1897, to the receiver of such corporation appointed on the 26th day of March, 1897; the said receiver to hold said property so levied upon, subject to the said levies and the liens of the said Lewis M. Seaver, with the same force and effect as if the said sheriff was still in possession of the said property. It further directed that the receiver should, within 60 days from its entry, pay to the said sheriff, out of the said property levied upon, his fees due him by virtue of said executions. The result of this transaction was that H. L. Ensign obtained a lien upon the property of the corporation thus levied upon, and that property went into the hands of the receiver subject to that lien, and he thus obtained a preference over the other creditors of the corporation.

The only question is whether, upon this evidence, the trial judge was warranted in finding that the officers of this insolvent corporation "suffered" one creditor to obtain a judgment against the property of the corporation with the intent of giving to such creditor a preference over all the other creditors of the corporation. It seems to me clear that but one inference could be drawn from these facts: that, when this new loan was obtained for the corporation, it was obtained with the intent of giving to the creditor security, not only for the loan he then made, but to secure him for loans previously made, and at a time when the corporation was insolvent, and known to its officers so to be. The obligations given by the corporation to this creditor were split up in amounts that would enable the creditor to obtain a judgment in the city court without waiting the time required by an action brought in the supreme court, and would thus enable the creditor to enforce his claim against the company at any time, and obtain a judgment. When it was ascertained that the transfer of the book accounts would be illegal, and in violation of the statute, an attempt was then made to give to this creditor a preference in another way, which was to obtain judgment in the city court for the amounts loaned, to issue execution upon this judgment, and to levy upon the property of the corporation before proceedings should be taken to have a receiver of the corporation appointed, and the corporation dissolved. The president of this corporation acted with the

intent of aiding this particular creditor in obtaining these judgments. He got possession of the summonses and complaints, and refused to return them to the secretary of the company so that legal assistance could be procured to prevent this creditor from getting a preference. Proceedings were at once taken to procure the appointment of a receiver, but these proceedings were intended to be subject to the levy upon the executions issued upon the judgments, so that the title of the receiver would be subject to the lien upon the executions issued upon the judgment. The parties to this proceeding were not acting at arm's length, the creditor simply seeking to obtain a judgment against the property of the corporation which he was entitled to obtain, and the corporation or its officers doing nothing to assist him in obtaining that judgment. The conclusion is irresistible that, if the officers of this corporation really wished to prevent this creditor from obtaining a preference, proceedings for the appointment of a receiver should have been sooner taken, so as to obtain such appointment before a levy could be made under the execution. It was this active co-operation of the president of the company which enabled this creditor to obtain the judgments which gave him a preference; and it was just such action of the officers of the company that this provision of the statute before cited was designed to prevent, and render void and ineffectual. As was said by Judge Rumsey in Re Muehlfeld & Haynes Piano Co., 12 App. Div. 492, 46 N. Y. Supp. 802: "Where the corporation merely fails to put in a defense to a just debt, it is not to be inferred from that fact alone that the judgment was suffered with intent to give a preference, and the judgment thus entered is not invalid." But here the officers of the corporation did much more. The president of the corporation assisted the creditors in obtaining the judgments, and it was through such assistance that they were obtained so as to give him a preference. Nor is the case of Spellman v. Looschen, 31 App. Div. 96, 52 N. Y. Supp. 543, in point. In that case there was no evidence of any act of any officer of the company which assisted the judgment creditor in obtaining a judgment which would give him a preference. So far as it appears, the parties were at arm's length; the creditor endeavoring to obtain a judgment, and the only neglect or act of the officers of the company being that no answer was put in in the action brought to obtain a judgment for an honest claim against the company. There was no avowed attempt to protect or to give to this particular creditor a preference. There was no act of the officers of the corporation to protect the creditor by splitting up the indebtedness of the corporation to the creditor into small amounts, so that judgment could be obtained against the corporation in two days; and no refusal of the president of the company to allow the secretary to obtain legal advice, or to institute such proceedings as could be taken so as to secure the distribution of the assets of the company among all its creditors equally. In this case, when the secretary proposed a proceeding of that kind, the president stated that the matter would be arranged on Monday or Tuesday. The whole evidence makes it clear

that the proceeding was with the intent of giving to this particular creditor a judgment upon which a levy could be made, so that, when a receiver was appointed, as was contemplated by the parties, such receiver would hold the property subject to the levy and execution. We think the facts proved upon the trial justified the inference that these judgments were "suffered" by an officer of this corporation for the sole purpose of giving to this particular creditor a preference.

There are no other questions presented upon this appeal. The order directing the sheriff to turn the property over to the receiver was made without notice to these plaintiffs, and was not an adjudication that the judgment was valid. It follows that the judgment below was right, and should be affirmed, with costs. All concur.