was done at the particular sessions which have been criticised as unnecessary. While many words are used, it amounts only to a general statement that something was done at these times, and that if nothing was done, or if adjournments were had unnecessarily, it was due to the action of the corporation counsel's office. The commissioners, however, may not shelter themselves behind any dereliction of duty upon the part of the corporation counsel which occasioned the prolongation of these proceedings beyond what was necessary; for, no matter how the delays were occasioned, if nothing was done upon those days which authorized the commissioners to charge, or the meetings were unnecessary, it would not entitle the commissioners to fees, no matter who was responsible therefor.

Making due allowance for the explanation which is made in the last affidavits, and fairly allowing for all the items therein claimed, it does not seem to entitle the commissioners to the fees which have been awarded. In the corporation counsel's certificate the commissioners are allowed for a certain number of days at the rate of $6 per diem, and a certain number of days at $10 per diem. This is due to the fact that, between the time when the commissioners entered upon the discharge of their duties and the date of their completion, a change was made in the law, increasing the compensation from $6 to $10 per diem. Upon the application to tax, the court denied the claim of the commissioners to a compensation of $10 per diem, and allowed them compensation at $6 per diem for the meetings held prior to January 1, 1902, which they claim to have been necessarily employed. No appeal was taken by the commissioners from the order, and therefore they are concluded by it.

On examining the whole record, we have reached the conclusion that the amounts which have been certified to by the corporation counsel are as fair and just as could be made, and we think there was authority for an allowance of compensation for the time certified by the corporation counsel at the rate of $10 per day.

We conclude, therefore, that the order should be modified, and that the allowance of the commissioners should be of the following sums: John J. Quinlan, $442; Daniel F. McCann, $332; William J. Fisher, $436; and as modified the order should be affirmed, with $10 costs and disbursements to the appellant. All concur.

---

(77 App. Div. 345.)

### In re FITZSIMONS.

(Supreme Court, Appellate Division, First Department. December 12, 1902.)

1. ATTORNEY AND CLIENT—CHAMPERTOUS AGREEMENT.

An attorney agreed with an administrator, who was also one of the next of kin, to prosecute a claim of the estate against the estate of a third person in consideration of half of the property which the client was to inherit or receive; the attorney agreeing to pay out of his compensation all claims which a brother attorney, previously and contemporaneously employed with him by the client, might have against the latter. Held, that the agreement was champertous, within Code Civ. Proc. § 74, providing that an attorney shall not give a valuable consideration to any person as an inducement for employment, but that the

section shall not apply to an agreement between attorneys for a division of fees.

2. SAME—UNCONSCIONABLE FEE.

An agreement by an attorney to represent an administrator, who is also one of the next of kin, in proceedings to compel an accounting by the administratrix of another estate, to which the client's decedent was an heir, in consideration of half of the recovery,—the estate to be divided being a large one,—is unconscionable and will not be enforced.

Appeal from surrogate's court, New York county.

Proceedings for the judicial settlement of the account of Mary E. Fitzsimons as administratrix de bonis non of the estate of Ann Cassidy, deceased. From an order denying a motion by Michael McNally and another, administrators of the estate of John P. McNally, deceased, who was an heir to the Cassidy estate, for leave to withdraw objections to the administratrix's account, such administrators appeal. Reversed.

Ann Cassidy died in August, 1897, leaving property real and personal. The heirs surviving were Peter A. Cassidy, a brother, Mary E. Fitzsimons, a sister, and John P. McNally, a nephew, each entitled to one-third of her estate. The last named was a lunatic, who for several years before his aunt's death was confined in an asylum. Peter A. Cassidy, the brother, was appointed administrator of the estate of Ann Cassidy, deceased, and after his appointment died, and the said Mary E. Fitzsimons was appointed in his place administratrix de bonis non. After this last appointment, John P. McNally died in the asylum, leaving as his only next of kin his father, Michael McNally; and the latter, with one William Harrigan, were appointed administrators of the estate of John P. McNally, deceased. As such administrators, they commenced proceedings in the surrogate's court to compel Mary E. Fitzsimons to render an account as administratrix, which resulted in an order requiring her to file such an account, to which, when filed, objections were made by Michael McNally as administrator and individually. Thereafter the account and objections were sent to a referee, and, while the matter was there pending, McNally withdrew his objections, and consented that the account be settled and allowed as filed. He also executed a general release to Mary E. Fitzsimons of all claims against the estate of Ann Cassidy. The administratrix then made a motion before the referee, based on the release and consent, for a report approving the account, which motion was opposed by I. Newton Williams, the attorney for McNally, who was also attorney for McNally and Harrigan as administrators, on the ground that he had a lien on the fund, which McNally could not release or settle. In opposing the motion, he introduced an agreement dated July 21, 1901, upon which the alleged lien was based, and which provided, so far as it is necessary to be considered upon this appeal, that he was to be paid, "as full compensation for his services, one-half of any and all property, both real and personal, which the said McNally had inherited," and that the latter for that purpose conveyed and assigned and set over to him or his assigns "one-half of all property, both real and personal, which he, the said Michael McNally, has inherited, has received or will receive, as an heir at law, or otherwise, in and to the estate of Ann Cassidy and Patrick Cassidy, her father, or which he is entitled to by virtue of his right of curtesy in and to any lands inherited by his wife," and that the said Williams accepts the said employment, and "agrees to pay out of his compensation any and all claims or charges which Robert S. Pelletreau may have against the said Michael McNally." The referee refused to grant the motion on the ground of want of power, and thereafter it was made before the surrogate, who denied it, and from the order thus entered this appeal is taken.

¶ 2. See Attorney and Client, vol. 5, Cent. Dig. § 351.

Argued before VAN BRUNT, P. J., and HATCH, O'BRIEN, INGRAHAM, and McLAUGHLIN, JJ.

Bayard L. Peck, for appellant.

I. Newton Williams, for respondent.

O'BRIEN. J. The extent of an attorney's lien, and its bearing upon the legal right of a client to settle an action or special proceeding without the attorney's consent, we deem it unnecessary to pass upon, in view of the conclusion at which we have arrived with respect to the validity of the agreement upon which the alleged lien is based. The consideration for the 50 per cent. interest which the attorney was to obtain in McNally's share of the estate, both individually and as administrator, was the obligation on the part of the attorney to prosecute the action, and "to pay out of his compensation any and all claims and charges which Mr. R. S. Pelletreau may have against the said Michael McNally, as heretofore agreed upon." It appears that the gentleman named was the former attorney of McNally, who had rendered services, and continued to do so, in conjunction with Mr. Williams, after the latter's retainer under the agreement set forth. A part of the consideration, therefore, underlying the agreement, was the promise by Mr. Williams to pay out of his own compensation whatever was due or should become due to Mr. Pelletreau for legal services, and discharge McNally from all liability to said Pelletreau. In addition, therefore, to the legal services to be rendered by Mr. Williams, we have, as an inducement for the conduct of the litigation by him, and for the agreement executed by McNally, the discharge of the latter from all liability to Pelletreau, and the assumption by Mr. Williams of whatever debt was then due or that might become due to Pelletreau. Although there is no express language in the agreement by which Mr. Williams is to pay the costs and disbursements that might be incurred in the litigation, it is significant that the agreement does not expressly impose that obligation on McNally. Had it appeared or could it be legally inferred that the obligation to pay the same rested upon the attorney, this under the authorities, would have rendered the agreement void. Rossman v. Seaver, 41 App. Div. 603, 58 N. Y. Supp. 677; Brotherson v. Consalus, 26 How. Prac. 213.

The question remains, however, whether the provision exonerating the defendant McNally from all obligations to his former attorney, and the provision by which Mr. Williams agrees to discharge whatever is due or might accrue to such attorney, renders the agreement void. By section 74 of the Code of Civil Procedure, it is provided:

"An attorney or counsellor shall not by himself or by or in the name of another person either before or after action brought, promise or give or procure to be promised or given a valuable consideration to any person as an inducement to placing or in consideration of having placed in his hands or in the hands of another person, a demand of any kind for the purpose of bringing an action thereon. But this section does not apply to an agreement between attorneys and counsellors or either to divide between themselves the compensation to be received."

After quoting this section, it was said in reference thereto in Oishei v. Lazzarone, 40 N. Y. St. Rep. 662, 15 N. Y. Supp. 933:

"That no cause of action can arise out of a transaction thus prohibited by statute is such a plain proposition as hardly to require the situation of authorities to support it. But such authority may be found in Baldwin v. Latson, 2 Barb. Ch. 306; Wetmore v. Hegeman, 88 N. Y. 73; Browning v. Marvin, 100 N. Y. 144, 2 N. E. 635."

Section 74 in express terms permits an agreement between attorneys to divide the compensation to be received; but in this case the agreement was not between the attorneys, but was one between a client and one attorney, by which the latter agreed to discharge the obligation of the client as an inducement to and a consideration for his retainer. We have not had brought to our attention any judicial determination of the exact meaning to be ascribed to the words "valuable consideration," as used in section 74 of the Code, but we think it requires no extended argument to demonstrate that an agreement to pay the debt of another to a third person is a valuable consideration. If the attorney had contracted to pay a given sum for the discharge of the former attorney's claim, without regard to the sources from which it was to be received, it would constitute an agreement to pay money in consideration of the retainer, and would be in every sense of the word a valuable consideration for procuring himself to be retained. The source from which the money is to come cannot change the fact. Whether the consideration be paid out of the money which he is to receive from the transaction, or independent of it, is not of consequence. The fact remains that the money which he uses pays this indebtedness, and is aside of the services which the attorney is to render; and it makes no difference from which particular fund he pays the money; it is none the less his money, and none the less a consideration, even though he take it from the proportion which he is to receive as a result of the litigation. This feature, we think, renders the agreement champertous.

There is another vice inherent in this agreement which renders it unenforceable. In consideration of what the attorney is to do, the client is induced to enter into an agreement by the terms of which he is to pay over to the attorney, as his compensation, one-half of his interest in what is stated to be a large estate. Such an agreement, upon its face, seems to us to be unconscionable. We have not overlooked the language of section sixty-six of the Code of Civil Procedure, which provides that an attorney has a lien upon his client's cause of action, and says that "the compensation of an attorney or counsellor for his services is governed by agreement express or implied which is not restrained by law." By this agreement the attorney is to receive as compensation 50 per cent. of what the client shall obtain as his interest in the estate involved in the proceeding. We are aware that of late the payment of large fees has been sanctioned by courts, but no case has been brought to our attention which has gone to the extent of upholding a fee of one-half the client's cause of action; and, now that the question is squarely presented whether such an agreement is conscionable, we think it would not be in the interest of public policy or professional ethics

to place the seal of approval upon it. The question which we are considering was to some extent involved in Coughlin v. Railroad Co., 71 N. Y. 450, 27 Am. Rep. 75, which was a negligence case, where an attorney had an agreement for a contingent fee of 50 per cent., and wherein the question of allowing him to enforce his lien as an attorney under such an agreement was considered. It was therein held that the lien of the attorney did not attach, and could not be enforced, because the action for negligence was not, in its nature, assignable; but in the course of the opinion it was said, "Still, an agreement to divide the recovery in such a case would attach itself to the judgment when recovered, and give the attorney an equitable interest therein." Two comments, however, are necessary with reference to that decision. One is that the question of the validity of the agreement was not considered,—the attorney having been denied relief upon another ground,—and the language quoted, therefore, was obiter dicta. The second is that, giving to the language used its most extended meaning and effect, it would have no application to an agreement such as this, wherein the client's interest is fixed and determined, and the controversy is confined principally to the amount which he is to receive. Here it is alleged that the estate to be divided is a large one, consisting of both real and personal property, in which the client who made the agreement had an undoubted interest of one-third. As said in Brotherson v. Consalus, supra:

"While the relation of attorney and client continues, the court will carefully scrutinize the dealings and contracts between them, and guard the client's rights against every attempt by the attorney to secure an advantage to himself at the expense of the client. Nor is it necessary in such case for the client to show actual fraud in order to obtain relief, but the law will presume in his favor so soon as the confidential relation is shown to have existed at the time of the transaction complained of. This rule has its foundation on principles of public policy, and is adhered to by the courts with the utmost rigor. Story, Eq. Jur. §§ 308–324; Wood v. Wood, 9 Johns. 253; Seymour v. Delancy, 3 Cow. 527; Lansing v. Russell, 13 Barb. 524; Bergen v. Udall, 31 Barb. 9; Evans v. Ellis, 5 Denio, 640; Wendell's Ex'rs v. Van Rensselaer, 1 Johns. Ch. 344; Howell v. Ransom, 11 Paige, 538; Dent v. Bennett, 7 Sim. 539; 27 Eng. Law & Eq. 100; Ford v. Harrington, 16 N. Y. 285; Sears v. Shafer, 6 N. Y. 272."

In Story's Equity Jurisprudence it was said (volume 1, § 308 et seq.):

"As to the relation of client and attorney, * * * the law, with a wise providence, not only watches over the transactions of parties in this predicament, but it often interposes to declare transactions void which between other persons would be held unobjectionable. * * * The burthen of establishing its perfect fairness, adequacy, and equity is thrown upon the attorney, upon the general rule that he who bargains in a matter of advantage with a person placing a confidence in him is bound to show that a reasonable use has been made of that confidence,—a rule applying equally to all persons standing in confidential relations with each other."

So, in Ford v. Harrington, 16 N. Y. 285, it was held, where an attorney had procured a conveyance of land, that, although the law would not relieve either party against the other where they stood upon an equal footing, yet the rule prohibiting an attorney from obtaining any advantage in a transaction with his client must prevail.

Our conclusion is that the agreement here in question should not be sanctioned or enforced as against the representatives of the estate who are strangers to it, and who would be put to trouble and expense in preventing litigation, as against them, based upon it. Upon the ground, therefore, that the agreement is unconscionable and is one that the court should not sanction or enforce, we think that the motion before the surrogate should have been granted, leaving the attorney to his remedy, as against the client, to obtain just compensation for the services rendered.

The order accordingly should be reversed, with $10 costs and disbursements, and the motion granted, with $10 costs. All concur.