Smith, J.
As between parties occupying no relation of confidence in or towards each other, or of control, by reason of position, employment or otherwise, undue influence can rarely be imputed without showing - some degree of fear, or threats, or advantage taken of position, or unfair practices or persuasion, involving in some degree a species of fraud. But when any of these elements enter into and constitute part of *4 the circumstances attending a transaction, and controlling the will of a party making a deed or other contract, courts of equity have long been accustomed to give relief. '
Judge Story states the rule, as extracted from and confirmed by many cases, as follows: Courts of equity, he says, relieve a party “ when he does an act or makes a contract when he is under the influence of extreme terror, or of apprehension short of duress; for in cases of this sort he has no free will, but stands in vinculis.” (2 Story Eq. Jur., § 239.) Circumstances, he says, of extreme necessity or distress of a party, although not accompanied by any direct duress or restraint, may also overcome free agency, and justify the court in setting aside the contract on account of some attending oppression, fraudulent advantage or imposition.
The civil law, from which, in a large degree, we derive the principles which control courts of equity, always sets aside a contract procured by force or fear, or want of liberty in regard to it. (Digest, lib. 4, tit. 2, § 1.) But it was said the party must be intimidated by the apprehension of some serious evil of a present or pressing nature, and such as is capable of making an impression upon a person of courage. But Pothier thinks this rule too strict, and that “ regard should be had to the age, sex and condition of the parties,” and that “ a fear which would not- be deemed sufficient to have influenced a man in the prime of life and of a military character, might be sufficient in respect to a woman or a man in the decline of life.” (Pothier on Obligations, Evans, p. 16, art. 3, §§ 2, 25.)
The rules in regard to the doctrine of undue influence have been asserted in numerous cases in our own courts. (Whelan v. Whelan, 3 Cow., 537; Sears v. Shafer, 1 Barb., 44; S. C., 2 Seld., 272; Howell v. Ransom, 11 Paige, 538; Ellis v. Messervie, id., 467; 5 Denio, 640.)
Within the principle asserted in these cases, the present case presents, I think, an instance of a contract procured by undue influence, if one ever existed. The assignment from the plaintiff to the defendant was most clearly extorted by a species of force, terrorism and coercion which overcame free agency; in *5 which.-fear sought security in concession to threats and to apprehensions of injury. It was made as the only way of escape from a sort of moral duress more distressing than any fear of bodily injury or physical constraint. Mr. White, the plaintiff’s brother-in-law, called at Eadie’s on his return from an evening meeting, and there found the defendant and his counsel, a police officer and another man. This, I should presume, from the season of year (April 4th), could not have been later than 9 o’clock. How long these persons had been there at that time does not appear. The defendant and his counsel were in an upper room, and the officer and the man with him in the parlor below. The witness was, requested by Mrs. Eadie to go into the drawing-room where the defendant was, who was talking very loudly and had some difficulty with her husband.
The witness immediately was informed what the difficulty was. The defendant insisted that Eadie should make over to him his house, and that an assignment of this policy should also be made. “ Eadie refused. Slimmon told him that if he did not, as sure as the sun rose to-morrow he would lodge him in yonder jail; he had an officer down stairs for that purpose.” The plaintiff was sent for and came in immediately. The matter was talked over, and much discussion ensued. Mr. Eadie refused to make an assignment of the policy. Slimmon then renewed his threats to arrest Eadie if the policy was not assigned. Mrs. Eadie became much excited, and appeared about to go into hysterics. In the course of the conversation the plaintiff said to the defendant, “ Mr. Slimmon, surely you won’t take away my husband.” He said “ he was sorry that he was compelled to do it.” Finally this woman consented, and about 3 o’clock the next morning the memorandum of agreement to assign the policy and settle the matter was executed by her and her husband. After about six hours of continuous altercation and angry discussion between Eadie and Slimmon, of excitement-and distress on the part of the plaintiff, the defendant had accomplished "his purpose. Through this period of time the fears and sensibilities of this woman *6 were worked upop by threats of a criminal prosecution which should consign her husband to prison, involving great mortification, shamej distress and ruin to herself and family, and the wife finally yields to the demands of her husband’s creditor.
I can imagine no duress over a man—no constraint over his person, or dread of personal injury—more likely to deprive him of free agency, and induce him to yield to the wishes and demands of another, than the duress over this woman, operating through appeals thus addressed to her pride, her fears, her affections and her sensibilities. A deed executed at such a time, under such circumstances, should be deemed obtained by undue influence, and ought not to stand.
It is conceded in the opinion of the learned judge in the court below, that this must be so if the transaction had been terminated at this interview; but it was held that, inasmuch as the assignment was not then executed, time was given for the plaintiff to become tranquil and act freely, and that the final assignment was not executed till after the lapse of sufficient time for that purpose. The formal assignment was executed about 1 o’clock the next day; but can there be any doubt that when it was so executed the plaintiff was still acting under the influence of the same apprehensions and fears which led her to consent to make the assignment during the night before ? But she had'in fact made a written assignment, valid in law if the policy was assignable by her, if she had made no other. The assignment executed the next day was a mere formality. She was applied to by the same counsel for the defendant who had been present during the previous night.and was familiar with all that then occurred; and, having consented to transfer the policy, and being thus committed to complete the assignment, she obviously knew not how to avoid it, or otherwise to escape from the strait in which sitó was placed. I think the execution of the formal assignment then made should be deemed part and parcel of the original transaction, and to be governed by the same influences and considerations which- controlled her signature of the memorandum a few hours before. The *7 threats of the arrest and imprisonment of her husband were still fresh in her mind, and the same apprehensions for his sake and her own, of shame, mortification and ruin, still stared her in the face. Another consideration, I think, should exert some influence in the decision of this question. Either the accusation which the defendant brought against Eadie was entirely unfounded, or he was seeking to compromise a criminal offence. If he knew that a crime had been committed by Eadie, he had no right to compromise it in this way, and the securities obtained upon such compromise were received as a consideration for compromising a felony, and for that reason were invalid; else the whole of his assertions and threats on the subject were a gross imposture. A majority of my brethren also think that the policy of insurance was not assignable by Mrs. Eadie. The policy was issued and taken under the act of 1840, entitled, “ An act in respect to insurance of lives for the benefit of married women.” We think the intent of the statute was to make these policies a security to the family of any married man, and a provision for their use and benefit, and that this intent would be defeated if they were held to be assignable by the wife like ordinary choses in action belonging to her in her own right as her separate property.
The judgment of the general term should therefore be reversed, and that of the special term affirmed, with costs.
Denio, J., concurred in the judgment on the ground last stated. The other judges concurred on both grounds, except Selden, Ch. J., who , was absent, and Wright, J., who dissented from both the positions of the preceding opinion.
At a subsequent term a motion was made for a re-argument, which was denied, and the following' opinion was thereupon delivered:
Denio, Ch. J.
It may be, as has been argued by the defendant’s counsel, that if the judgment of the general term had been reversed on the facts, a new trial ought to have been *8 awarded, on the ground that the facts upon which we proceeded, as establishing the plaintiff’s right to his money by showing the assignment to have been procured by unlawful means, were not those found by the judge at the circuit. But the other ground of recovery which is referred to at the conclusion of the opinion of Judge Smith, could not have been changed by any evidence which might have been given on a second trial. The only title which, by any possibility, the defendant could have to this money, must be founded upon the assignment which the plaintiff had executed to him. If that assignment was invalid for any cause, the defendant could not make title to this money under it; and if it was not, in law, assignable, the attempt to assign it was, of course, a void act. It is suggested, on behalf of the defendant, that the question of the legal assignability of the policy was not passed upon and decided at the trial. But we think this is a mistake. The complaint does not notice the assignment, but claims the money by virtue of the policy and the happening of the event upon which the insurance money was payable. It does state that the defendant claims that the money was payable to him, but does not state the grounds of his claim. The defendant, in his answer, then sets up the assignment as the foundation of his title to the money. Thus the validity of the assignment becomes the only question m the case. On the trial it was agreed that the pleadings should be amended so as to conform to the proof of the respective parties.
When the defendant offered the assignment in evidence, the plaintiff, among other objections, insisted that the policy, being for the benefit of a married woman, was not assignable to a third person for his benefit. This and his other objections were overruled, and the plaintiff’s counsel excepted. The decision of the judge finally turned upon questions of fact, namely, the improper practices of the defendant in obtaining its execution. But if it were conceded that this was wrong, still, if the policy was in law unassignable, the plaintiff has in no manner waived that objection. She insisted upon it on the trial, and though she was doubtless content with a judg *9 ment in her favor on any ground, she never withdrew from her position that upon this ground in particular she, and not the defendant, was entitled to this money. By the judgment of the general term she has been effectually deprived of the benefit of this objection. If it is a valid one, the judgment is erroneous and we ought to reverse it. It is no answer to this to say that the judge at the special term did not go upon this ground, for it lies at the foundation of the action. . The fact upon which it rested was unquestioned and was indisputable, and could not be changed by any evidence which could have been given. It was patent on the face of the policy, and as both parties relied upon that instrument, it is quite impossible that the defendant’s case could be improved in this respect by a new trial.
We see no reason to change the opinion, which we arrived at at the last term, as to the assignable quality of the instrument. By the common law, a person could insure his own life for any sum for which he might choose to pay the premium, and which the insurers would engage to6 insure; but if one desired to insure the life of another, he could only insure the interest which he had in such other life. If he undertook to insure a gross sum, and the contract was not susceptible of a construction which would limit the recovery to the actual damages sustained, the contract would be void under the statutes against betting and gaming. This principle the legislature, by the act of 1840 (Laws, p. 59), relaxed in respect to insurance as effected by a married woman, for any sum which she and the insurance company might see fit to contract for. It was provided that, in the case of her surviving her husband, the amount payable by the terms' of the policy should be payable to her for her own use, free from all claims of the representatives of' her husband or of his creditors. There is another feature in the act which shows that it was an enabling and not a declaratory provision. By the general rules of law a policy on the life of one sustaining only a domestic relationship to the insured, would become inoperative by the death of such insured in the lifetime of cestui que vie; or if it *10 could be considered as existing for any purpose after that event, it would be for the benefit of the personal representatives of the insured; but by this act the contract may be continued in favor of the children of the insured wife after her death. These features distinguish this case from that of an ordinary chose in action belonging to a married woman as her separate estate. The provision is special and peculiar, and looks to a provision for a state of widowhood, and for orphan children; and it would be a violation of the spirit of the provision to hold that a wife,- insured under this act, could sell or traffic with her policy as though it were realized personal property or an ordinary security for money. The motion for a rehearing should be denied.
Motion denied.