### EVANS *vs.* ELLIS and wife.

Where the relation of solicitor and client exists, and a security is taken by the solicitor from his client, the presumption is that the transaction is unfair, and the *onus* of proving its fairness, is upon the solicitor.

A mortgage covering a portion of the premises in a partition suit, given by the complainant to his solicitor, to secure payment for his costs, would be void for champerty. *Semble. Per* BEARDSLEY, J.

A stranger to the suit cannot apply by petition for moneys payable to the complainant in the suit, on the ground that he holds a lien thereon acquired *pendente lite.* His remedy is by bill.

APPEAL from chancery. The respondent, Mrs. Ellis, was one of several heirs of William Messerve, who died leaving real estate, her share of which was worth about $2500. A bill for a partition between the heirs, was filed by her husband and herself, before the vice chancellor of the first circuit. John T. Duryee commenced the suit as their solicitor, and conducted it for sometime, when another person was substituted as solicitor

A decree was obtained that the premises be sold, and the proceeds be divided among the heirs. Pending the suit, Duryee who it appeared was irresponsible, obtained from Mr. and Mrs. Ellis a mortgage upon her share of the real estate for one thousand dollars, he giving Ellis his bond for the like amount. The mortgage Duryee assigned to Evans the appellant. After the decree, Evans, who was not a party to the suit, applied by petition for an order that the mortgage should be paid out of Mrs. Ellis' share of the proceeds of the sale. Affidavits of Mr. and Mrs. Ellis were read in opposition to the motion, alleging that the mortgage was obtained from Ellis by Duryee, upon his promise that it should not pass out of his hands and should be returned in a few days to Ellis, and that Mrs. Ellis executed and acknowledged it, believing it was one of the proceedings in the suit. The petition and affidavits were referred to a master to ascertain the facts. Duryee was examined before him, and testified that there was an arrangement between him and Ellis, that Ellis and his wife should make the mortgage and exchange it with him for his bond for the same amount: that he was then to procure some one to purchase the mortgage and pay to Ellis from its proceeds, from time to time, such sums as he might want: that the mortgage should be paid from Mrs. Ellis' share of the moneys in the partition suit, when there was to be an accounting between him and Ellis for moneys advanced and counsel fees, and if there should then be any thing owing to Ellis, he should give him a new bond for the balance. It was shown that the commissioner before whom the mortgage was acknowledged, was the law partner of Duryee, and that he had several times in the progress of the suit called upon Mrs. Ellis to administer oaths to her which were required in the suit : that she was not informed what the mortgage was, but simply requested by her husband to sign and acknowledge it to be her deed. The master reported the testimony, with his opinion that the mortgage was valid against Ellis, and that it appeared that he had an estate by the curtesy in the mortgaged premises upon which it was a lien ; but that as against Mrs. Ellis it was void. Exceptions were taken to the report, which were

overruled by the vice chancellor. Ellis and his wife then appealed to the chancellor, who adjudged that the mortgage was fraudulent and void and wholly inoperative in the hands of Evans, and ordered that the petition be dismissed. His opinion will be found in *Ellis* v. *Messervic*, (11 *Paige*, 467.) Evans then appealed to this court where the cause was submitted on written arguments.

*Wm. Curtis Noyes*, for appellant, insisted among other points that the mortgage was valid as against Ellis, he being of full age and understanding what was to be done with it: that the mere relation of attorney and client is not sufficient to invalidate transactions between them without evidence of fraud, or that an undue advantage has been taken of the confidence reposed in the attorney. (*Saunderson* v. *Glass*, 2 *Atk.* 296; *Wamsley* v. *Booth, id.* 25; *Newman* v. *Payne*, 2 *Ves. jun.* 199; *Purcell* v. *McNamera*, 14 *id.* 91; *Wood* v. *Downes*, 18 *id.* 121; *Star* v. *Vanderheyden*, 9 *John.* 253; *Wendall* v. *Van Rensselaer*, 1 *John. Ch. Rep.* 344.) The relation of attorney and client here is not of the confidential character which demands that every act of the attorney should *per se* be deemed suspicious; and arrangements made by attorneys and counsel with their clients, for securing their compensation, have repeatedly been sanctioned. (*Thallimer* v. *Brinkerhoof*, 3 *Cowen*, 623; *Burt* v. *Place*, 6 *id.* 431; *Bristol* v. *Dann*, 12 *Wend.* 142; *Adams* v. *Stevens*, 26 *id.* 451.)

*E. Sanford & H. F. Clark*, for respondents. The vice chancellor had no jurisdiction upon the petition of the appellant, not a party to the suit, to interfere and dispose of the fund. The appellant should have filed his bill to determine the validity of the mortgage. The mortgage is void, both as having been procured by fraud and as having been obtained by a solicitor from his clients. The appellant took it subject to the equities existing between the parties to it.

Evans v. Ellis.

Spencer, Senator. Instead of pursuing the obvious method of testing the validity of the mortgage held by him, Evans, a stranger to the partition suit, applies after decree to have the proceeds of the sale belonging to Ellis and his wife, paid over to him. Upon this irregular, if not void proceeding, the question has been litigated and a decree pronounced, from which an appeal was taken to the chancellor, who reversed it upon the merits, remarking that it was unnecessary to inquire whether the vice chancellor had jurisdiction upon the mere petition of one, not a party to the suit, to interfere and dispose of the fund. In the view the chancellor took of the merits it was unnecessary. I think, however, this question worthy of consideration, and that the proceedings were altogether irregular, and that the petition should have been dismissed without consideration. For this reason the decree of the vice chancellor might properly be reversed. But as a majority of the court may not concur in this view, it becomes necessary to examine the other question.

I am not prepared to say that every bond and mortgage taken by an attorney or solicitor, from his client, upon the subject matter of the suit, must necessarily be void. Though I am free to confess that I look upon such transaction with no favor, and with a disposition to scrutinize it with the utmost rigor. If, upon such scrutiny, it shall come up to the lofty and most just standard of Lord Eldon, (6 Ves. 278,) if the attorney or solicitor is able "to manifest that he has given his client all that reasonable advice *against himself*, that he would have given him against a *third person ;* then perhaps such security may be held valid. The whole burden of proof should be thrown upon the attorney or solicitor." Lord Eldon farther says, this results from that great rule of the court, that he who bargains in a matter of advantage to himself with a person *placing confidence* in him, is bound to show that a reasonable use has been made of the confidence.

If tried by this standard the bond and mortgage will stand the test, they may be held valid.

A solicitor who will obtain a void mortgage against the wife

who is his client, upon her only patrimony, being also a mother with little children to support, without the aid of a thriftless husband, ought not to have any violent presumption indulged in his favor, that the mortgage against the husband, (also a client,) whose business capacity only fits him for a " coffee roaster," has any greater validity as to him.

If this solicitor has proved that he could, consistently with his duty to his client, asking counsel at his hands, have advised him that he could safely and properly lend his bond and mortgage on his life estate in the slender patrimony of his wife and children to a man utterly insolvent, without any other security than the bond of such insolvent would furnish, then perhaps he may ask that this bond and mortgage should be pronounced . valid in his hands.

At the time the bond and mortgage were executed the only business transaction existing between Duryee the solicitor and Ellis the client, was the bill filed for the partition of the estate inherited from the wife's father, in which there was a small bill of costs to become due to the solicitor and his two partners, which when earned and due would be a lien upon the land and first to be paid out of the fund. These securities could not have been needed to make these costs more secure. The first item charged in the account of cash advanced by Duryee to Ellis, is under the date of 26th October, 1839, $10. This was the same day the bond and mortgage were assigned to Evans, and probably after such assignment. At this time then he had advanced nothing to Ellis on the bond and mortgage, and had given nothing for them but his own worthless bond, or equally worthless promise. It can hardly be pretended that Duryee, the solicitor, could enforce the payment of these securities against Ellis, his client, if they had been due. They were then in his hands utterly void. Nothing which has since happened has changed his rights.

Did Duryee pass any greater interest in them than he had himself at the time of the assignment? Evans gave no credit to any statements made to him by Ellis, for he never took the precaution to speak to Ellis about them as a prudent man

Evans *v.* Ellis.

would have done. Duryee was no agent of Ellis in the assignment of the bond and mortgage. They had, as he says, been given to him as a personal favor, on which he had not advanced any thing. Evans had knowledge of circumstances enough to put him on inquiry, if the case needed the aid of this rule of law. But he took them subject to the stubborn and salutary rule of law, at his peril, and acquired no greater interest or more valid title than Duryee had.

Upon the merits, therefore, he has no claim for the money he seeks to recover.

The decree of the chancellor should therefore be affirmed.

BEARDSLEY, J. The assignee of the mortgage, admitting that he advanced the full sum of one thousand dollars for it, is in no better condition than Duryee, the mortgagee. If there was any objection to the validity of the mortgage as against him, the objection is equally available against the assignee. No mortgage security given by a client to his solicitor should be allowed to stand in any case, unless its fairness in every respect is shown by the solicitor. The presumption in such cases is against the fairness of the transaction, and the burden of proof to repel the presumption is on the solicitor. He must show he gave value for it. Here such proof was not given. There was also in this case very strong evidence of misrepresentation, trick and artifice in obtaining the mortgage. It was moreover a mortgage on the land in suit, and to allow the security to stand would tend strongly to encourage champerty and maintenance. The policy of the law is decidedly against it. I am therefore for affirming the order of the chancellor.

PUTNAM and LOTT, Senators, delivered written opinions in favor of affirmance.

WRIGHT, Senator, delivered a written opinion in favor of reversing the order of the chancellor, and affirming that of the vice chancellor.

De Kay *v.* Irving.

JOHNSON, Senator, delivered an oral opinion in favor of affirmance.

Upon the question being put, " *Shall the order of the chancellor be reversed ?*" the members of the court voted as follows :

*For affirmance :* The PRESIDENT, Mr. Justice BEARDSLEY, and Senators BARLOW, BEEKMAN, BURNHAM, DENNISTON, DEYO, EMMONS, HAND, HARD, JOHNSON, JONES, LOTT, MITCHELL, PORTER, PUTNAM, SANFORD, SCOVIL, J. B. SMITH, S. SMITH, SPENCER, TALCOTT, WHEELER, WILLIAMS—24.

*For reversal :* Senator WRIGHT—1.

Order affirmed.