## Mann vs. Fairchild.

The section of the statute prohibiting the purchase of choses in action by attorneys, counsellors or solicitors, for the purpose of bringing suits thereon, extends to purchases made at judicial sales had under the direction of an officer of the court.

The intent to prosecute, which is necessary to make a purchase by an attorney, &c. illegal, has reference to suits in equity as well as to actions at law.

Where a complaint set forth that, for several years prior to the failure of the St. L. Bank, the defendant had been its cashier and principal financial agent; that he was also its assignee, under several assignments; that his accounts with the bank were numerous and complicated; that the plaintiff had purchased from the receiver of the bank, all its claims and demands and rights of action against the defendant; and the plaintiff prayed that the defendant might be directed to answer, and account to him for the money, property and assets of the bank, which came into his possession or under his control; to state the nature and extent of his indebtedness to the bank, in his individual capacity and as cashier, agent and consignee; and that he might be adjudged to pay the balance which might be found due from him, to the plaintiff; *Held*, that the case was within the 52d section of the title of the revised statutes relative to the time of commencing actions; and that the plaintiff would not be barred by lapse of time, if his causes of action accrued within ten years before the commencement of the suit.

This cause came before the court upon appeals by the defendant from orders made by a justice at special term, upon demurrers. The action was brought to enforce the collection of certain demands against the defendant, which had been purchased by the plaintiff at a public sale of the effects of the St. Lawrence Bank, by the receiver of said bank, had under the decretal order of the chancellor. The defendant alledged in his answer, among other matters of defense, that at the time of the purchase of the demands by the plaintiff, he, the plaintiff, was, and still continued to be, an attorney and counsellor at law, and a solicitor and counsellor in chancery, duly admitted, licensed and sworn, and was practicing as such, in copartnership with T. H. Rodman, his attorney in this action; and that being such attorney, solicitor and counsellor, the plaintiff purchased the claims in suit, for $153; and that he purchased the same with full knowledge and notice that they were contested and would be litigated, and with the intent and for the purpose of bringing

a suit or suits thereon, contrary to the form of the statute in such case made and provided. The plaintiff demurred to this portion of the answer, and assigned the following causes of demurrer: 1st. That the sale at which the said claims or demands were bought by the plaintiff was a judicial sale, made under and by virtue of a decree of the said court of chancery in a cause then pending therein, and was made by the receiver in said complaint named, as one of the officers of said court, and the plaintiff had a lawful right to buy the same. 2d. That this is an equitable action, of which before the adoption of the present constitution of this state, the court of chancery had exclusive jurisdiction, and of which this court, now solely, by virtue of its equitable powers, acting in the place and instead of the said court of *chancery*, has jurisdiction.

The defendant also demurred to so much of the reply of the plaintiff as related to the statute of limitations; and the demurrer presented the question whether the demands set forth in the complaint were of such a nature as to be barred at the end of six years, or only at the expiration of ten years. The facts upon which this question depended are stated in the opinion of the court. The demurrers were brought to argument at a special term, before Justice Morse, who ordered judgment for the plaintiff, on both demurrers; and the defendant appealed.

*James & Brown*, for the appellant. I. The plaintiff's demurrer to part of the answer is not well taken. The answer brings the case precisely within the terms of the statute, (2 *R. S.* 288, § 71,) and the demurrer admits the statement to be true. (1.) The terms of the statute imply, and take for granted, that proof of such illegal purchase, bars a recovery, in whatever form of action or forum the suit may be brought. It would be absurd to suppose it was intended to be a defense in an action at law, and not to the more burthensome action in chancery. The purchase being prohibited, the plaintiff acquired no title. (*Baldwin* v. *Latson*, 2 *Barb. Ch. Rep.* 306. *Code*, §§ 111, 144.) The act of buying was a crime, and the court will not aid the illegal purchaser. (*Hall* v. *Mullen*, 5 *Har. & John.* 193.

Mann v. Fairchild.

*Arden* v. *Patterson*, 5 *John. Ch.* 44. *Serdenbender* v. *Charles*, 4 *Serg. & Rawle*, 159. *De Groot* v. *Van Duzer*, 20 *Wend.* 290. *Pennington* v. *Townsend*, 7 *Id.* 276.) (2.) That the purchase was made at a sale at public auction, by a receiver, does not relieve the case. The case of *Tuttle* v. *Jackson*, (6 *Wend.* 213,) is not applicable; it arose upon the statute forbidding sales of pretended titles, and none of the reasons given for that decision have any application to this case. That statute was declaratory of the common law; this is not. That prohibits all grants in certain cases, and must necessarily give way when the grant is by operation of law; this only prohibits a small class of persons from purchasing with an illegal intent. There are other persons enough in the community whose interest it is to settle and not to prosecute such demands, who may lawfully buy at such auctions. In that case the law authorized the sheriff to sell, and consequently some one must have a right to buy; but the authority to sell, does not necessarily imply that all persons may buy and with any intent. If *Mann* v. *Fairchild*, (5 *Barb.* 108,) was binding authority at the special term, it is not so on appeal; and besides, what was there said upon this point was unnecessary to the decision of the case, and is based upon the fallacious argument that, because the sale "must be made to close up the concern," therefore, every legal disability resting upon purchasers is removed. The result from that argument, that aliens, indians and corporations could buy real estate at such sales, ad libitum, would be less objectionable than that attorneys could buy for the purpose of prosecution.

II. The defendant's demurrer to part of the reply is well taken. The statute prescribing the limitation of six years, applies to the causes of action set forth in the complaint. (2 *R. S.* 295, § 18.) The ten years statute only applies to suits over the subject matter of which a court of equity has peculiar and exclusive jurisdiction, and which subject matter is not cognizable in courts of common law, and to cases of such trusts as are the mere creatures of a court of equity, and not cognizable by courts of common law. (2 *R. S.* 301, §§ 50, 52. *Roosevelt* v. *Mark*, 6 *John. Ch.* 266, 289. *Murray* v. *Coster*, 20 *John.* 576. *Kane*

Mann v. Fairchild.

v. *Bloodgood*, 7 *John. Ch.* 90 ; *affirmed*, 8 *Cowen*, 360. *Humbert* v. *Trinity Church*, 24 *Wend.* 587.) It only applies where the plaintiff can have no remedy at law. (*Idem.* *Elwood* v. *Deifendorf*, 5 *Barb.* 398, 411.) The claims to which the plaintiff makes title, are, 1st. For money due from the defendant to the bank upon account. 2d. For money due from the defendant and Bacon, to the bank. Assumpsit surely would lie to recover these demands. 3d. For furniture taken and appropriated by the defendant, either assumpsit or trover would lie to recover its value. 4th. For the six Arkansas bonds. Trover would lie to recover the value of these. (*Gillet* v. *Fairchild*, 4 *Denio*, 80. 2 *R. S.* 295, § 18. *Id.* 301, § 49.) There was no trust created by the resolutions of the bank. If they could operate as a transfer, the complaint shows that they were absolutely void. (1 *R. S.* 591, § 9. *Gillet* v. *Moody*, 3 *Comst.* 479.) The invalidity of these resolutions forms the whole basis of this action ; and consequently the relief demanded is, not that the resolutions may be carried out, and the property distributed among the directors or creditors, but that the proceeds may be paid to the plaintiff. The actions arising upon trusts to which the ten years limitation applies, are actions by a *cestui que trust* against the trustee, to have the trust executed. (*Kane* v. *Bloodgood*, 7 *John Ch.* 90.) An action by the creator of the trust to recover a reverting surplus, would lie as well at law as in equity. But if the resolutions were valid, so that the plaintiff could not sue at law, then the creditors intended to be secured, are the beneficial owners of the securities, and the defendant the holder of the legal title thereto. No title ever vested in the receiver, and none passed to the plaintiff. And if the receiver could maintain an action in such case to have the trust executed, that right of action has not been transferred to the plaintiff. Again, in such action the creditors would be indispensable parties, and this objection may be made in any stage of the cause. (*Edwards on Parties*, 2, 23. 2 *Barb. Ch. Pr.* 320.)

*T. H. Rodman*, for the plaintiff. *First.* As to the demurrer to the answer. I. The plaintiff purchased the demand in ques-

tion at a *judicial sale*, made by the receiver, an officer of the court of chancery, under its decree rendered in a suit then pending. The statute prohibiting attorneys from buying claims for the purpose of prosecution, does not, and was not intended, to apply to such sales. (*Tuttle* v. *Jackson*, 6 *Wend.* 224. *Mann* v. *Fairchild*, 5 *Barb.* 108.) II. The statute in its terms applies only to suits at law; it does not apply to suits in the court of chancery; (2 *R. S.* 288, §§ 75 *to* 81. *Hall* v. *Gird, in error*, 7 *Hill*, 586;) and cannot, therefore, apply to this case; for this is an equitable action, of which, before the adoption of the present constitution of this state, the court of chancery had exclusive jurisdiction; and of which, now solely by virtue of its equitable powers, this court has jurisdiction. III. This is a penal statute, and must be strictly construed. (2 *R. S.* 288, § 73.) The reason of the statutory prohibition against the prosecution of demands at law, did not apply to prosecutions in the court of chancery; for in that court, costs, which were presumed to be the object of the prosecution, were in the discretion of the court. Under the code, the costs in such cases, are yet discretionary. (*Code*, § 306.) IV. The question is adjudicated in the former action between the same parties. (*Mann* v *Fairchild*, 5 *Barb.* 108.)

*Second.* As to the order overruling the demurrer to the reply. I. The suit is brought to obtain an account from the defendant, of the property of the St. Lawrence Bank, assigned by its board of directors, when the bank was insolvent, to the defendant, with the intent of giving preferences to particular creditors; and the plaintiff claims this account as the purchaser of the property so assigned, or a part thereof, from the receiver of the bank. The assignment by the bank was "invalid in law." (1 *R. S.* 591, § 9.) The same statute declares, that the defendant is bound to account for the property, *to the creditors or stockholders, or their trustees, as the case may be.* This is the statutory liability of the defendant. II. This assignment being invalid and inoperative, the creditors attempted to be preferred by it, have no rights whatever under it. They cannot call the defendant to an account. But the plaintiff is the holder of the rights of the

bank. The stockholders constituted the bank, and in their corporate capacity, owned all the property. The receiver, by the statute, (2 *R. S.* 469, § 67,) as well as by the assignment, became vested with all that property, and represents both creditors and stockholders. (*Gillet* v. *Moody*, 3 *Comst.* 479.) The plaintiff is, therefore, in legal effect, the assignee and representative of all the stockholders, and possesses the rights conferred on them by the statute; and consequently is entitled to call the defendant to an account, for the assigned property. "Creditors or stockholders," any or all of them, possess the right to call the defendant to an account. III. But irrespective of this statutory right, the plaintiff, as the assignee of the bank and the owner of the assigned property, has an equitable right, as the bank had, to an account of this property. The defendant holds it without title. It is not charged, that the assignment to him was fraudulent. His embezzlement of the property, after the assignment, is alone complained of as fraudulent. The statute declares that the transfer is invalid; not fraudulent, even in law. The property then, remained the property of the bank, and the defendant was bound by the principles of common justice to return it, on demand, to the bank or its legal representative. IV. As between the bank and the defendant, the transfer was valid; at least the plaintiff has treated it as if it were valid, and the defendant may, on an accounting in this action, be entitled to an allowance, for all bona fide appropriations of the property, according to the provisions of the transfer. The plaintiff demands an account and payment of what may appear to be due on such accounting, and nothing more. This accounting can only take place in a court of equitable jurisdiction. No authority is required to sustain this proposition. The 49th section 2 R. S. 301, does not apply, because a court of common law has not concurrent jurisdiction of this case; and its operation upon such cases is expressly restricted by the 50th section. This is a suit for equitable relief, and comes within the class of cases provided for in section 52.

*By the Court,* S. B. STRONG, J.   The revised statutes provide that no attorney, counsellor or solicitor, shall directly or indirectly buy, or be in any manner interested in buying, any bond, bill, promissory note, bill of exchange, book debt, or other thing in action, with the intent, and for the purpose, of bringing any suit thereon.   (2 *R. S.* 288, § 71.)   The claims set forth in the complaint are confessedly such as are described in this statutory prohibition.   The defendant alledges in his answer, and the plaintiff admits by his demurrer, that the plaintiff is, and at the time when he purchased the claims in controversy was, a practising attorney, counsellor and solicitor, transacting business in those capacities in the city of New-York, and that he purchased such claims with full knowledge and notice that the same were contested and would be litigated, and with the intent, and for the purpose, of bringing a suit, or suits, thereon. The pleadings clearly bring the plaintiff's transactions within the letter of the statute, and, unless there is something in the history of the case which exempts him from its operation, his purchase was null and void, and conferred upon him no right of action.   The complaint alledges, and for the purpose of determining this demurrer the allegation must be taken to be, as it undoubtedly was, true, that his purchase was made at a judicial sale had under a decretal order of the late court of chancery; and the plaintiff contends that the statute was not designed to prevent purchases under such circumstances; and also that the intent to prosecute, which was requisite to make any purchase illegal, had reference to actions at law only, and not to suits in chancery.

It is a safe rule to adopt, in the construction of a prohibitory statute, that it was designed to prevent all acts included in its terms which might be productive of the evils it was intended to remedy.   The main object of the statute in question was to prevent litigation by prohibiting the purchase of choses in action by those whose pecuniary interests might be peculiarly advanced by instituting suits upon them, and who, in consequence of their position, might conduct such suits upon unequal terms.   Now the injury resulting from such interested litiga-

Mann v. Fairchild.

tion would be the same, whether the purchase was made at a judicial, or a private, sale. There is no conceivable difference. The purchases at judicial sales might not be as numerous as at private sales, and the evil therefore not so widely extended; but a subdivision of a class prohibited from acting, in general terms, by a statute, is not exempt from its operation by reason of some distinguishing peculiarity which in no manner diminishes the mischief it was designed to prevent. It was contended on the argument that as the statute authorizing the sale of the effects of an insolvent corporation, contained no restriction as to purchasers, the prohibitory provision relative to the purchase of choses in action by members of the bar, was inapplicable to them. That might be true if the application of the restriction would prevent the sales altogether. But it would not have that effect. It might diminish the number of bidders, and to some extent the avails of the sales. But it would no doubt be better to submit to that evil rather than encounter the greater one of creating incentives to, and facilities for, litigation. Statutes should be construed together, and a special prohibition in one should be deemed an exception to a general provision on the same subject, in another, rather than a contradiction. Taking the two statutes to which I have referred, together, they authorize the sale of the effects of a bank which has failed, except of its choses in action to lawyers for the purpose of prosecution. The case of *Tuttle* v. *Jackson*, (6 *Wend.* 213,) was cited by the plaintiff's counsel to show that statutory restrictions do not apply to judicial sales. That case had reference to the provisions of the statute to prevent the sale and purchase of pretended titles. (2 *R. S.* 691, §§ 5, 6.) But those provisions referred, in terms, exclusively to private sales. The fifth section prohibits sales of lands which are the subjects of controversy where the "grantor" is not in possession; and the sixth section forbids the sale of any pretended right or title to lands, unless the "grantor," or those by whom he claims, shall have previously been in possession for the space of one year. Judicial sales are made by public officers, and not by private grantors. Accordingly, the provisions of the two sections which I have last quoted

are inapplicable to the sale of lands under execution when the sheriff is directed to sell the real estate which the defendant had at the time when the judgment was docketed, *in whose hands soever the same may then be.* If, however, the prohibition against selling lands out of the possession of the grantor had been sufficiently broad to include judicial sales, in general terms, then the authority to sell lands out of the possession of the defendant, under an execution, would have been a specific exception, and the court of dernier resort was right in deciding, as that tribunal did, in *Tuttle* v. *Jackson*, that the prohibition did not extend to judicial sales. I cannot, however, agree with the remark made by the chancellor, in that case, that such sales do not come within the mischiefs intended to be guarded against by the statute. The result of a sale of a pretended title would be quite as mischievous in the one case as in the other ; but the good generally resulting from the unrestricted sale of the titles of judgment debtors, no doubt overbalances the evil which would be produced by occasional sales of the titles to land of parties out of possession.

It seems to have been the opinion of Judge Beardsley, as expressed in *Hall* v. *Gird*, (7 *Hill*, 586,) that the intent requisite to prevent the purchase of choses in action by members of the bar, had reference to the institution of actions at law only, and not to suits in equity. The reason assigned by him is that the provisions in the 75th and the six following sections of the same title of the revised statutes relative to certain actions on the purchased claims, are applicable to legal, but not to equitable actions. That is so, undoubtedly ; but those enactments do not purport to include all suits which may be instituted on such unlawfully purchased claims. There may be others, and to them, and indeed to all on such claims, in whatever court they may be instituted, the maxim *ex malificio non oritur actio* would apply and defeat them. Accordingly, it was said by the late chancellor, in *Baldwin* v. *Latson*, (2 *Barb. Ch. Rep.* 307,) that the prohibitory provision in question undoubtedly applies to the purchase of a chose in action for the purpose of instituting a suit in equity, as well as to the purchase with the intention

of bringing a suit thereon at law, and he held in that case that a purchase made contrary to the provisions of the statute would defeat a suit instituted by the guilty party, in a court of equity. That such was the design of the legislature, is evinced by extending the provision to "solicitors," who at the time of the passage of the revised statutes acted as such only in the court of chancery.

In a case between the parties to this suit, and upon the same transactions, in this court sitting at a general term in the fourth district, published in the fifth volume of Barbour's Reports, (p. 108,) an opinion was expressed that the restriction in question does not extend to purchases made at judicial sales. But that point was not necessary to the determination of that case as it was then presented. It was then as it is now, a suit in equity, and a plea had been interposed to the whole complaint, and in the opinion of the court satisfactorily proved, and it was then very properly determined, without reference to the absolute sufficiency of the defense against the claims, that the plaintiff must fail. The opinion that the demands were valid in the hands of the plaintiff, and would have prevailed, under appropriate pleadings, was *obiter*. It could not have been reviewed on an appeal, and we are at liberty to disregard it as a controlling authority without departing from the salutary injunction *stare decisis*.

The admission of the wrongful intent, made, in effect, by the plaintiff's demurrer, was probably not designed as absolute, but merely for the purpose of having the applicability of the restriction to the supposed circumstances, settled. Although, therefore, the defendant is entitled to judgment on this demurrer, the plaintiff should be permitted to reply as to the facts which it admits, on payment of the costs.

The demurrer interposed by the defendant to a part of the replication, raises the question whether the case presented by the plaintiff is one over which a court of equity has peculiar and exclusive jurisdiction. If it is, as it is not wholly on the ground of fraud, the answer that the cause of action did not commence within the six years next before the commencement

of the suit, presents no bar. The complaint sets forth that the defendant had been for several years prior to the failure of the bank, its cashier and principal financial agent; that he was also its assignee under several assignments; that as such his accounts with the bank, at the time when its affairs were transferred to the receiver, were numerous and complicated; that the plaintiff had purchased from the receiver all the claims and demands and rights of action of the bank against the defendant, not only singly, but as one of the late firm of Fairchild & Bacon, and the plaintiff asks, as (if his purchase is valid,) he had a right to ask, that the defendant may be directed to answer and account to him for the money, property and assets of the bank, of every description, which came into his possession or under his control, to state the nature and extent of his indebtedness to the bank, arising from his dealings with it in his individual capacity, and as cashier, agent and consignee, and that he may be adjudged to pay to the plaintiff the money and property which may be found, upon such accounting, to be due or to belong to him, or to which he may be entitled. Surely the old action of account would not give to the plaintiff the relief to which, under the allegations in his complaint, he would be entitled; nor could such relief be obtained by him in any other action at law. The case is within the 52d section of the title of the revised statutes relative to the time of commencing actions; and the plaintiff will not be barred from obtaining relief by lapse of time, if his causes of action accrued within ten years before the institution of this suit.

There must be judgment for the plaintiff on the demurrer, interposed to a part of his replication, by the defendant; with liberty to the defendant to withdraw the demurrer on payment of costs.

Judgment against both demurrers.

[KINGS GENERAL TERM, January 3, 1853. *Barculo, Brown* and *S. B. Strong*, Justices.]