# SUPREME COURT.

## BROTHERSON agt. CONSALUS.

An allegation in a complaint, not denied by the answer, stands *admitted of record.*

The purchase of a judgment by an *attorney*, for the purpose of enforcing it by execution, is not in violation of the statute which prohibits attorneys from buying choses in action with the intent and for the purpose of bringing suits thereon.

This prohibition is not limited to suits at law, but extends to actions in equity.

An *agreement by an attorney*, on commencing an action, that he will indemnify the client against the costs which may be recovered against him therein, is *void for champerty and maintenance*, notwithstanding section 303 of the Code of Procedure.

While the relation of *attorney and client continues*, the court will carefully scrutinize the dealings and contracts between them, and guard the client's rights against every attempt by the attorney to secure any advantage to himself at the expense of the client.

Nor is it necessary in such case for the client to show actual, or, as it is sometimes called, active fraud, in order to obtain relief; but the law will presume in his

favor so soon as the confidential relation is shown to have existed at the time of the transaction complained of.

An attorney, who purchases the subject matter of the litigation from *his client's adversary* in the suit, will be deemed to have purchased *in trust* for his client at his election.

The disability of an attorney to purchase a demand against his client, as to which he has been retained and consulted, and to hold it for his own benefit, will continue *after the confidential relation has ceased*.

In such case, the attorney is entitled to hold and enforce the demand only for the sum advanced on its purchase.

These consequences result from an application of principles of *preventive injury*, which often attach to innocent transactions with the same legal effect as if the transactions were in fact unjust and fraudulent.

*Saratoga Special Term, September*, 1863.

THIS action was in the nature of a *scire facias*, calling on the defendant to show cause why execution should not issue on three judgments recovered against the defendant, of which the plaintiff became the assignee. Two of the judgments were for costs recovered against the defendant in actions brought by him against A. L. Linn, in which he was a defeated plaintiff. It is unnecessary to notice the third judgment, as all claim on it was withdrawn by the plaintiff on the trial.

The defendant interposed three defences : First, payment ; second, statute of limitations ; and third, that the plaintiff agreed, on the commencement of the actions, to indemnify and save the defendant harmless from all costs which might be recovered in the suits.

The cause was tried before the court and jury. No evidence was offered in support of the first defence ; the second was not substantiated ; and the jury found a verdict in favor of the plaintiff on the third. The court reserved the case for consideration, and finally ordered judgment in favor of the plaintiff. Various questions of law were raised in the action, which are considered in the opinion, in which such other facts are stated as are necessary to a proper understanding of the case.

J. BROTHERSON, *for the plaintiff.*

E. F. BULLARD, *for the defendant.*

Brotherson agt. Consalus.

BOCKES, Justice.   This action is brought for the purpose of enforcing three judgments against the defendant, of which the plaintiff is the assignee.   A motion was first made at special term for liberty to issue executions, but various matters of defence were interposed, and the motion was denied, with liberty to bring an action.

At the trial the plaintiff abandoned all claim under the third judgment specified in the complaint, and by permission of the court withdrew it from the cause.   The cause therefore stands on the two judgments entered February 3d, 1853 ;  one for $599.65, the other for $145.25.

The defendant, by omitting to deny it, admits the allegation of the complaint whereby the recovery and entry of the judgments are averred.   This allegation stands admitted of record.   Nor is it charged in the answer that the judgments are without jurisdiction and void.   The defendant is not, I think, in a position to claim that the judgments are invalid.   But had he not admitted the due recovery of the judgments, the objection could not prevail. The court had jurisdiction of the parties and of the subject matter of the actions, and the entry of judgments, if irregular, was not void.   They remain of record, not vacated, annulled or reversed.

The plaintiff was a practicing attorney and counsellor of this court at the time he purchased the judgments.   But according to the decision in *Warren* agt. *Paine* (3 *Barb. Ch.* 630), he had a right to make the purchase for the purpose of issuing executions and collecting the debts, notwithstanding the statute prohibiting attorneys from buying choses in action with the intent and for the purpose of bringing suits thereon.   As was there held, the policy of the law does not embrace such case.   At one time it was supposed that this defence was not available in suits in equity where costs are in the discretion of the court.   (7 *Hill*, 586.)   It is, however, now well settled that it is as effectual in actions in equity as in actions at law.   (2 *Barb.*

*Ch.* 306; 14 *Barb.* 548; 9 *Barb.* 297.) But according to the case of *Warren* agt. *Paine*, the plaintiff was not prohibited from buying the judgments for the purpose of enforcing them by execution. In this case he applied, on motion at special term, for liberty to issue executions on the judgments, when he was met by an allegation of payment, and of other defences, which led to a denial of the motion, with liberty to bring an action on the judgments, and this suit was then instituted. This defence, however, is not here available, if for no other reason, because not set up in the answer—and in fact is not urged by the defendant's counsel.

The defences interposed by the answer to the first two judgments specified in the complaint (the third being withdrawn, hence out of the case) are, *first,* payment; *second,* statute of limitations; and *third,* that the judgment belonged in fact to the plaintiff to pay, under an agreement made between him and the defendant at the commencement of the actions, to the effect that he would indemnify the defendant against all costs that might be recovered therein.

As to the first defence of payment, no evidence whatever was offered in its support; so that defence fails.

The second defence sets up that the causes of action stated in the complaint did not, nor did either of them, accrue within twenty years before the suit was commenced. The two judgments in suit, it seems, were entered on the 3d February, 1853, less than ten years prior to the commencement of the action. Hence this defence is unsupported.

·As to the third defence, the jury, on the evidence, have found a verdict in favor of the plaintiff, that no such agreement as that set up in the answer was made between the parties. The verdict therefore disposes of that defence.

It was insisted on the trial that this third alleged defence was unavailing, if the facts on which it depended were established; *first,* because covered by the arbitration be-

fore Mr. Wait; and *second*, because the alleged agreement by the plaintiff to indemnify the defendant against costs was void for champerty and maintenance. I ruled against both propositions. My ruling is of no importance in this case, inasmuch as the jury found against the defendant; that is, against the existence of the alleged agreement.

It is but fair to the plaintiff to remark here, that he indignantly denied, on oath, that he made any such contract, and the jury declared it unproved against him. On further consideration, I am not entirely satisfied with my decision at the circuit on the two points above stated; and although unnecessary, the verdict having been in favor of the plaintiff, I propose to submit a few suggestions on those points.

In 1860, about ten years after the alleged agreement was charged to have been made, the parties submitted all their matters in difference, claims and demands to arbitration, and the plaintiff claimed for services in these suits, which claim the defendant resisted; but the plaintiff prevailed. Was not this determination of the arbitrator—this adjudication—conclusive between the parties? And in regard to champerty and maintenance: According to the *alleged* contract, the plaintiff, an attorney and counsel of this court, agreed to carry on those suits at his own expense, and indemnify the defendant against all costs. An agreement by an attorney to carry on a suit at his own expense was, before the Code, unlawful. Section 303 has modified the law of champerty. By this section the former rules and provisions of law, restricting or controlling the right of a party to agree with an attorney, solicitor or counsellor, for his compensation, is repealed; so an agreement between a party and his attorney, that he shall share in the recovery or have an interest in the subject matter of the suit, is now lawful. (23 *Barb.* 420.) In this case, however, it is intimated that a contract by an attorney to carry on the suit of his client at his own expense would

be illegal and void. This would be maintenance in its most obnoxious sense, and is quite different from an agreement with the client for extra or unusual compensation allowed by the Code. It seems to me that a contract between an attorney and his client, that he will carry on a suit at his own expense, and indemnify the client against costs, is still subject to the just denunciation of the law, notwithstanding section 303 of the Code. Such agreement much more than simply assists a party to prosecute; it encourages him to litigate with a certainty of impunity as to the result and consequences of the suit. It is, as stated by BLACKSTONE, " an offence against public justice, as it keeps alive strife and contention, and perverts the remedial process of the law into an engine of oppression." The section alluded to gives to the parties a right to agree on the measure of the attorney's compensation, which is a different thing from a right to indemnify a party against the contingency of defeat as an inducement to enter upon the chances of litigation. If, therefore, the contract set up in the answer had been entered into in fact, it would have been void, and neither party could have derived any advantage from it. But it is unnecessary here to enter into any discussion of this question, as the jury have found that no such agreement was made.

Important questions yet remain for examination.

It is insisted that the plaintiff can recover only the amount actually paid by him on the purchase of the judgments, for the reason that he was the attorney and counsel of the defendant in the actions, and also was his counsel in efforts to defeat the judgments after they were entered, on a claim that they were invalid and void. The position is, that the purchase by the plaintiff should be deemed and held to be a purchase for the benefit of the defendant.

Against this it is first urged, that no such defence is set up in the answer. I entertained the point on the trial,

deciding that I would permit an amendment of the answer if I should determine that it had foundation in law.

It appears that these actions terminated in judgments against the defendant, entered February 3d, 1853; but the plaintiff continued to be his general attorney and counsel until 1860, when all confidential business and social relations ceased between them. Two years after, the plaintiff became the purchaser of the judgments. At this time he was not the attorney, counsel or agent of the defendant, either as regards those judgments or as to any other suit, matter or thing whatsoever; nor did he owe the defendant any duty, unless some obligation or restriction remained, growing out of their former confidential relation.

While the relation of attorney and client continues, the court will carefully scrutinize the dealings and contracts between them, and guard the client's rights against every attempt by the attorney to secure an advantage to himself at the expense of the client. Nor is it necessary in such case for the client to show actual, or, as it is sometimes called, active, fraud, in order to obtain relief; but the law will presume in his favor, so soon as the confidential relation is shown to have existed at the time of the transaction complained of. This rule has its foundation on principles of public policy, and is adhered to by the courts with the utmost rigor. (*Story's Eq. Jur. sec.* 308 *to* 324; 9 *John.* 253; 5 *Denio*, 640; 1 *John. Ch.* 344; 11 *Paige*, 538; 3 *Cow.* 527; 13 *Barb.* 524; 31 *Barb.* 9; 7 *Simons*, 539; 27 *Eng. Law & Eq.* 100; 16 *N. Y.* 285; 6 *N. Y.* 268, 272.) Several of these cases were between principals and their agents, but the rule is the same in all cases whenever a confidential relation is shown to exist between parties. In this case, however, the purchase of the judgments was not made *from the client*. No contract was made *with him*. All business relations, indeed all social relations, had ceased between them long prior to the purchase. *He* was not led into any improvident contract, sale or arrangement with

the plaintiff by reason of any fraud or imposition, or by the exercise of any undue influence growing out of their relations or otherwise.

But if an attorney purchase the subject matter in litigation from his client's adversary in the suit, or any interest therein, his client will be entitled to the advantages growing out of the purchase at his election—the attorney will be held to be the agent of his client for the purpose of effecting the purchase, if the client chooses to hold him to that position. His agreement with the client under the retainer is to the effect that he will use his faculties and powers for the advantage of his client in regard to the matters of the litigation; and his purchase will be deemed to be a purchase *in trust* for his client, if the latter choose so to regard it. A purchase under such circumstances by the attorney, for his own benefit and profit, is inconsistent with the duty he owes to his client, and its advantages may be claimed by the latter at his option. (4 *John. Ch.* 118; 4 *Cow.* 717.) But the purchase in this case was not of the subject matter of the litigations in the suits between Consalus and Linn, as to which the plaintiff was at one time the attorney and counsel of Consalus. Those litigations were in regard to rights and claims preferred by Consalus against Linn; not in relation to demands preferred by Linn against Consalus. In those litigations Linn prevailed, and the judgments, of which the plaintiff became the assignee, were for the costs recovered by Linn against Consalus as a defeated plaintiff. The plaintiff was not, therefore, the purchaser of the subject matter of the litigation in those suits, nor of any interest therein. Hence it follows that the rule, that an attorney shall not be permitted to purchase from his client's adversary the matter in litigation, and hold it to the disadvantage and against the wishes of his client, has no application here—for the reason that the plaintiff did not purchase any subject matter in litigation in the suits between Consalus and Linn.

There is still another principle urged as applicable to this case, which will now be considered.

The disability of an attorney to purchase a demand against his client, as to which he has been retained and consulted, and to hold it for his own benefit against the wishes of his client, will continue in some cases after the confidential relation has ceased. It has been held that such disability continues so long as the reason for it exists. (8 *Clark & Finnel.* 657 ; 25 *Penn. R.* 354.) It was said, in the first case cited, that an attorney is disabled from purchasing for his own benefit charges on his client's real estate without his permission ; and the disability will continue as long as the reason exists, although the confidential employment may have ended. In the last case cited, it was held that the disability did not terminate with the relation of attorney and client, but was perpetual in its character ; so that the purchase of any adverse claims or rights by the attorney will be held to be in trust for the former client and those claiming through or under him. (*See also* 5 *John. Ch.* 44.) To the same effect is the decision in *Galbraith* agt. *Elder* (8 *Watts*, 81). These cases show that the attorney will not be permitted to buy and hold for himself against his former client a right, claim or demand as to which he had been the adviser of the latter; for it will be presumed that he acquired information in regard to it under the confidence of his former relation, or in the exercise of his duty as attorney and counsel. In such case, an obligation remains to be faithful to the trust reposed in him, notwithstanding his employment may have terminated : and it is not in his power to relieve himself from a disability which he voluntarily assumed, and which became permanent so soon as it attached. It is no answer in a case of this character to say, that the demand was already fixed and determined as a legal obligation ; that the claim was open alike to all purchasers ; and that the party is not injured in being compelled to pay a just and

legal debt. This might be said of very many cases of purchases, by attorneys during their confidential employment, of interests in the subject matter of the litigation. But a principle of public policy and natural equity intervenes, and denounces the act as unfair, because accomplished under circumstances of temptation which might lead to violations of just obligations and duties. As is said by Judge STORY, this doctrine of restraint and disability is founded in an anxious desire of the law to apply the principle of preventive justice, so as to shut out the inducement to perpetrate a wrong; and by disarming parties of all legal sanction and protection for their acts, to suppress the temptation which might otherwise be found too strong for virtue.

Here, it is true, the purchase was not a purchase of the subject matter of the litigation in the suits between Consalus and Linn. If it had been, the plaintiff, according to the authorities cited, could not have purchased and held the purchase for his own benefit in defiance of his former client. He would have been presumed to have acquired a knowledge of those matters during his confidential employment which would put him under a disability to hold the purchase for his own advantage, in case his client saw fit to claim its benefits to himself. But the purchase was of judgments for costs, embracing no litigated claim, and if no question as to their effect or validity had been raised, nor any effort been made to resist their collection, I can see no reason why the plaintiff would not have been at liberty to purchase and enforce them, the same as if he had been an entire stranger to them. Being formally entered they became ostensibly the adjudication of the court, and the plaintiff's duties in regard to them ceased, unless he again laid himself under obligation by a further retainer to defeat their effort.

It appears, however, that a serious question arose in regard to their validity, and it seems that the defendant

retained the plaintiff to resist them. He advised the defendant that they were void, and repelled by his threats all attempts to enforce them until his employment by the defendant as attorney and counsel ceased. In this he undoubtedly acted in good faith and in perfect obedience to duty; and his advice was not without judicial sanction. But afterwards he stepped in and purchased the judgments for a small sum, and seeks to enforce them against his former client for their full amount. Is he not prohibited from so doing? Under these circumstances must not his purchase be deemed to enure to the benefit of the defendant to the extent of the sum discounted to him on the purchase? He had been the attorney and counsel of the defendant during the progress of the suits which terminated in judgments against the latter for costs, and was thereafter the counsel of the defendant in regard to those judgments, and advised him that they were void and could not be enforced. This was his relation to the defendant and to these judgments until 1860. If he had purchased them for a trifle while under employment by the defendant to resist and defeat them, most clearly the purchase would have been held to be for the benefit of the latter at his election; and we have seen that the right remains to the client to claim the advantages of a purchase by the attorney of the subject of the retainer after his confidential employment has terminated. I am persuaded that the plaintiff can have only the amount advanced by him on the purchase of the judgments, with interest thereon from the time of the purchase. For the recovery of this amount he is at liberty to issue execution on each of the first two judgments mentioned in the complaint as specified in my findings and decision.

It does not follow from these conclusions that the plaintiff has been guilty of any moral turpitude, or of any breach of duty, or actual violation of good faith, as an attorney and counsel; for it does not appear that he did in fact

acquire any information in regard to these judgments during his confidential employment, which gave him any advantage over the defendant, not possessed by every other person, in or out of the profession. These conclusions result from an application of principles of preventive injury, which often attach to innocent transactions with the same legal force as if the transactions were in fact unjust and fraudulent. So it sometimes happens that acts wholly free from evil design are held fraudulent or illegal for the reason that their tendency in general is to wrong and public or private injury.

The defendant's counsel insists that this is an action in equity; hence that the costs are in the discretion of the court. In this I think he mistakes. The action is in the nature of a *scire facias*, and is strictly an action at law. The costs follow the recovery as a matter of course. It has been treated as a case in equity by the counsel on both sides from the first, and I have permitted it to be tried and heard as an equity cause, no objection being made. But if an action in equity, costs should be allowed I think to the plaintiff. He moved in the first instance for liberty to issue execution on the judgments. The defendant could then have tendered the amount advanced by the plaintiff in their purchase, or consented that executions might issue for that amount; but he resisted the motion—insisted that the judgments were paid—and also urged the defence which on the trial was determined to be without foundation in fact. He demanded that the plaintiff should be put to his action on the judgments. Consequently the motion was denied, with liberty to the plaintiff to bring this action. Here, too, various defences were interposed, all of which have been found to be unsubstantial. It is said that the defendant succeeds in part, but his partial success is not on any of the points litigated under the answer, and could have been just as well and effectually raised on the motion for leave to issue execution, as on trial in an action. The

plaintiff has succeeded on all the questions of fact litigated, and also on most of the questions of law. He should be allowed the costs of the action, with an extra allowance of five per cent. on the amount of the recovery. The case has been sharply litigated, and is peculiar both in respect to matters of law and fact. It has, too, involved much labor in its progress.

The plaintiff must have judgment in accordance with the above views.