(85 Misc. Rep. 162)

### REILLY v. FRIAS et al.

(Supreme Court, Special Term, New York County.   April 17, 1914.)

1. ATTORNEY AND CLIENT (§ 123*)—ACTIONS BY CLIENT AGAINST ATTORNEY—EVIDENCE—SUFFICIENCY.

In an action to set aside a contract which plaintiff claimed defendant had procured from him while acting as his attorney, evidence *held* insufficient to sustain defendant's claim that the parties were partners.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 239–245, 248, 249; Dec. Dig. § 123.*]

2. EVIDENCE (§ 566*)—OPINION EVIDENCE—ADMISSIBILITY.

Where the writing itself is not before the court, expert testimony as to its genuineness cannot be received; the opposite party not having an equal opportunity for comparison.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2390; Dec. Dig. § 566.*]

3. ATTORNEY AND CLIENT (§ 123*)—CONTRACTS BETWEEN—BURDEN OF PROOF.

Where an attorney procures a contract from his client, he has the burden of proving its perfect fairness, and that his client had full information of all of the material circumstances, and, unless such proof is made, the attorney cannot recover; there being a presumption of actual fraud by reason of the relationship.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 239–245, 248, 249; Dec. Dig. § 123.*]

4. ATTORNEY AND CLIENT (§ 123*)—ACTIONS BETWEEN—PLEADING.

In an action by a client to set aside a contract made with his attorney, a complaint alleging that the attorney procured the contract by reason of the relationship states a cause of action and puts the attorney on proof.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 239–245, 248, 249; Dec. Dig. § 123.*]

5. CANCELLATION OF INSTRUMENTS (§ 35*)—DEFENDANTS—PROPER PARTIES.

In a suit to set aside a contract which defendant had assigned to a corporation, the corporation is a proper party, where defendant admitted that he was the owner thereof.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. §§ 55–64; Dec. Dig. § 35.*]

6. CANCELLATION OF INSTRUMENTS (§ 35*)—NECESSARY PARTIES.

In a suit to set aside a contract which required plaintiff to deliver to defendant a percentage of the stocks and bonds to be received by him in payment for the construction of an electric railroad, where defendant claimed specific performance, the railroad is not a necessary party; the stocks and bonds having been delivered.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. §§ 55–64; Dec. Dig. § 35.*]

Action by Hugh J. Reilly against Jose Antonio Frias and another. Judgment for plaintiff, and defendants' counterclaim dismissed.

See, also, 158 App. Div. 925, 143 N. Y. Supp. 1141; 159 App. Div. 883, 143 N. Y. Supp. 869.

Gleason & Carlton, of New York City (Schuyler C. Carlton and Charles Grossman, both of New York City, of counsel), for plaintiff.

Smith, Gormly & Salomon, of New York City (Wm. Travers Jerome, Isidor J. Kresel, and Mark M. Salomon, all of New York City, of counsel), for defendants.

NEWBURGER, J.  The plaintiff, a contractor, in 1899 arrived in Cuba after the close of the Spanish-American War. and prior to the establishment of the republic of Cuba.  In the month of February, 1902, after spending some time in Havana, he went to the city of Cienfuegos.  He remained there for the purpose of meeting the defendant Frias, who at that time was a man of large influence in his country, a lawyer in active practice, and a leader in his political party. He had been mayor of the city of Cienfuegos, and a professor of law in the National University.  He had been elected a member of the Cuban Senate, of which later he became the secretary.  The plaintiff could not speak Spanish, while Frias could speak both Spanish and English.  As the result of interviews between the plaintiff and the defendant Frias, the plaintiff sought to procure the contract from the common council of Cienfuegos for waterworks and sewers of the city.  Through the efforts of Frias, a contract that had been previously granted to one Dady was rejected by the common council, and subsequently a new contract was made by that municipality for the plaintiff in the name of one Orta.  That the plans therefor had been prepared under the instructions of Reilly by one Vermeule, an engineer, and the moneys for the preliminary work were paid by the firm of Upmann & Co., bankers in Havana, out of moneys advanced by one Diaz.  An application was also made to the railroad commission for leave to make the preliminary surveys in the name of Diaz, as president of the Cienfuegos, Palmira & Cruces Electric Railway & Power Company, a corporation to be incorporated, and the payment of the sum of $2,910, required by the commission to be deposited, was also advanced by Upmann & Co., under Reilly's instruction, out of the moneys advanced by Diaz.  In September, 1903, Reilly, through his attorney, Judge Browne, now deceased, procured the incorporation of the railroad company under the laws of the state of Maine.  This corporation was organized with a capital of $2,000,000, and at once made a contract with the plaintiff by which the plaintiff agreed to construct the projected railroad of a length of about 43 miles and equip it under the specifications in the contract in consideration of the receipt by him of 19,940 shares of the capital stock and $2,000,000 in bonds, secured as a lien on the railroad.  In January, 1904, Frias procured and transmitted a complete franchise or concession of the railroad company to Reilly.  This concession granted to the company the right to the full use of the public waters of the rivers Hanabanilla and Negro for the production of the motor power required for the railroad, and also to utilize it for industrial purposes.  The plans of the railroad were approved on the 4th of April, 1904, but nothing was done except the buying of the land until 1906, except on October 23, 1905, a contract was executed by the railroad company, Reilly and Frias, whereby the railroad company agreed to provide Frias, at $40 a horse power, with such horse power as he may need or desire to light the city of Cienfuegos and other municipalities along the route of the proposed railway.  In March, 1906, after legal advertisement and full competition, Reilly made a contract with the city of Cienfuegos for supplying it with water and sewers.  In October, 1906, Frias, for what reason he has not fully explained, left Cuba.  At that

time Reilly, the plaintiff, had secured in his own name the concession for the railroad, the contract for the waterworks, and an option for the purchase of Espada Cemetery, in the city of Havana, for the price of $15,000. In July, 1903, the cemetery property was deeded by the church to Diaz and Reilly. Subsequently Reilly paid Diaz $80,000 for a one-fourth interest in the cemetery, and the title vested in Reilly. He also, prior to Frias' leaving Cuba, made a mortgage on the cemetery for $300,000. In 1907, and after Frias had left Cuba, the common council of Cienfuegos and Governor Magoon revoked the waterworks contract, but in August, 1908, a new contract was entered into on the recommendation of William H. Taft, then Secretary of War, and approved by President Roosevelt. In the proceedings before the Secretary of War and the President, Attorney McCarter, of New Jersey, appeared for Reilly. In 1908, under the Railroad Law of Cuba, the railroad company having failed to complete the construction of its road within five years, a new petition was filed, and the railroad commission granted a new concession, and providing that the waters of the rivers Hanabanilla and Negro should not be used for industrial purposes. Subsequent to this, and on the 9th of March, 1909, Reilly wrote to Frias informing him that the people who were fighting him in Cuba believed that Frias was Reilly's partner, and asking Frias to assign back to him (Reilly) his interest in the contract to take power at $40. It is claimed that, pursuant to such letter, the defendant executed an assignment to the plaintiff of whatever interest he (Frias) had in the contract to take electric power, but, as a condition of such assignment, that the plaintiff had executed an acceptance of such assignment under which Frias claimed a 20 per cent. interest in the moneys to be paid by the Cuban government under the waterworks contract. In 1911 Frias assigned his claim against the plaintiff to one Altamira, who organized the defendant corporation, Latin-American Contracting & Improvement Company, and assigned to it the claim of Frias against the plaintiff herein. Frias at the trial testified he was the owner of the corporation.

This action is brought by the plaintiff, in which he asks that the contract of October 23, 1905, the acceptance of March 27, 1909, and the assignment by Frias to Altamira, and by Altamira to the defendant Latin-American Contracting & Improvement Company, be canceled and set aside. The defendant Latin-American Contracting & Improvement Company in the prayer for relief in their answer asks that the plaintiff account for 20 per cent. of the moneys received from the republic of Cuba, and that the plaintiff transfer to the defendant a one-half interest in the capital stock and bonds of the railroad company and a one-half interest in the cemetery. In other words, the defendant seeks to require specific performance of the contracts referred to. It is conceded that, Frias having assigned to the plaintiff his interest in the contract of the railroad, the defendants make no claim to the power contract.

[1, 2] It is important, therefore, to determine, first, what was the relationship between the parties? Was it that of attorney and client, as claimed by the plaintiff, or of a partnership, as contended for by the defendant? An examination of all the exhibits submitted dis-

closes no relation between the parties that can be construed as a partnership. The contract with the Cuban government, with the railroad commission, and with the church authorities in Havana were all in the name of Reilly. Frias' name nowhere appears. So, also, in the option from the plaintiff to Steinhardt, and marked Exhibit 23, Frias' name does not appear as a party, but reference is made to the contract with Frias for furnishing him electric power for lighting municipalities on the route of the railway by the railroad company. In the correspondence between Reilly and Frias there is nothing that can be construed to create a relationship of partners. On the contrary, it is apparent to me that it was one of attorney and client. The defendant admits having received large sums of money from the plaintiff, and the exhibits show that he also received money from plaintiff's legal representative in New York for legal services rendered in connection with the contracts that he now seeks to enforce as a partner. The assignment from Frias to the plaintiff, upon which the defendants predicate their consideration for the so-called acceptance, appears to have been a voluntary act on the part of Frias, brought about, undoubtedly, by the condition of affairs in Cuba. The original was in the Spanish language, of which, it is conceded, plaintiff was not familiar with. The defendant Frias' description of the manner in which this so-called acceptance was procured creates considerable doubt as to whether or not the same was executed by the plaintiff. In this connection it is true that expert testimony was offered to show that the handwriting upon such acceptance was that of the plaintiff; but as the handwriting was not before the court, and the expert's testimony was governed greatly by photographs, the same must be rejected. As was said by Presiding Justice Van Brunt in the Matter of Burbank, 104 App. Div. 318, 93 N. Y. Supp. 870:

"In all cases where evidence has been allowed because of qualification by comparison of handwritings, all the writings must be before the court, so that the opposite party may have an equal opportunity for comparison."

Evidence was also offered by the defendant in the form of depositions taken under commissions of parties who claim that on certain occasions the plaintiff spoke of the defendant as his partner. This has been satisfactorily negatived; not only by the plaintiff's testimony, but by the documentary proof offered. I am therefore of the opinion that there is not sufficient evidence to warrant a court of equity in holding that a partnership existed between the plaintiff and the defendant Frias, but rather that the relationship between the parties was that of attorney and client. The plaintiff was a stranger in Cuba; he was unfamiliar with its laws or its language; he met the defendant Frias, who was a man of prominence and influence in his community. The correspondence between the parties, the testimony of both the plaintiff and the defendant Frias, clearly show that their relations became intimate. The plaintiff had a perfect right to rely upon that relationship and confide in him.

[3] In Bingham v. Sheldon, 101 App. Div. 48, 91 N. Y. Supp. 917, it appeared that the plaintiff had engaged the defendant, an attorney, to collect a claim; that, after having been paid for his services, he

induced his client to become interested in a stock transaction. Mr. Justice Woodward, at page 52 of 48 App. Div., at page 920 of 91 N. Y. Supp., of the opinion says:

"He had come into her business affairs as a lawyer and a gentleman; he had come into her confidence because he was a lawyer; and, in the absence of a distinct and unequivocal understanding between them that this relationship had ceased, we are of opinion that the defendant was subject to the rule that, in transactions between attorney and client, the former is bound to show that his dealings have been fair and just, that his client acted on full information of all of the material circumstances, and that he did not take undue advantage of his client's complacency, confidence, ignorance, or misconception. Place v. Hayward, 117 N. Y. 487, 497 [23 N. E. 25], and authority there cited. The rule is not limited to cases of attorney and client, guardian and ward, trustee and cestui que trust, or other similar relations, but it holds good wherever fiduciary relations exist, and there has been a confidence reposed which invests the person trusted with an advantage in treating with the person so confiding. Freelove v. Cole, 41 Barb. 318; Ford v. Harrington, 16 N. Y. 285. When this relation is shown to exist, it imposes the burden of proof upon the person taking securities, or making contracts inuring to his benefit, to show that the transaction is just and fair, and that he has derived no unfair advantage from his fiduciary relation. Fisher v. Bishop, 108 N. Y. 25, 29 [15 N. E. 331, 332 (2 Am. St. Rep. 357)]. In the last above-cited case it was said: 'One who has, by reason of his supposed ability and integrity, been employed by another as a confidential adviser to transact the business of obtaining surety from an insolvent debtor, and who draws the transfer of property for that purpose, occupies a confidential position towards his employer, which, in good faith and common honesty, should preclude him from taking advantage of his situation, and using the information thus acquired to the detriment or disadvantage of his employer.'"

In the Matter of Fitzsimons, 77 App. Div. 350, 79 N. Y. Supp. 198, quoting from Brotherson v. Consalus, 26 How. Prac. 213, Mr. Justice O'Brien says:

"While the relation of attorney and client continues, the court will carefully scrutinize the dealings and contracts between them and guard the client's rights against every attempt by the attorney to secure an advantage to himself at the expense of the client. Nor is it necessary in such case for the client to show actual * * * fraud in order to obtain relief, but the law will presume in his favor so soon as the confidential relation is shown to have existed at the time of the transaction complained of. This rule has its foundation on principles of public policy and is adhered to by the courts with the utmost rigor. Story's Eq. Jur. §§ 308–324; Starr v. Vanderheyden, 9 Johns. 253 [6 Am. Dec. 275]; Seymour v. Delancy, 3 Cow. 527 [15 Am. Dec. 270]; Lansing v. Russell, 13 Barb. 524; Bergen v. Udall, 31 Barb. 9; Evans v. Ellis, 5 Denio, 640; Wendell v. Van Rensselaer, 1 Johns. Ch. 344; Howell v. Ransom, 11 Paige, 538; Dent v. Bennett, 7 Simons, 539; Holman v. Loynes, 27 Eng. Law & Eq. 168; Ford v. Harrington, 16 N. Y. 285; Sears v. Shafer, 6 N. Y. 272."

In Story's Equity Jurisprudence it was said (volume 1, § 311 et seq.):

"As to the relation of client and attorney, * * * the law with a wise providence, not only watches over all the transactions of parties in this predicament, but often interposes to declare transactions void which, between other persons, would be held unobjectionable. * * * The burden of establishing its perfect fairness, adequacy, and equity is thrown upon the attorney, upon the general rule that he who bargains in a matter of advantage with a person placing a confidence in him is bound to show that a reasonable use has been made of that confidence; a rule applying equally to all persons standing in confidential relations with each other. So in Ford v. Harrington, 16

N. Y. 285, it was held, where an attorney had procured a conveyance of land, that, although the law would not relieve either party against the other where they stood upon an equal footing, yet the rule prohibiting an attorney from obtaining any advantage in a transaction with his client must prevail."

From a careful reading of these authorities, it appears to be well settled that, where an attorney seeks to enforce an agreement obtained from a client, the burden is shifted on him to show that a reasonable use has been made of the confidence reposed in him by his client, and that the plaintiff is not required to show actual fraud in order to obtain relief, but that the courts will presume in his favor as soon as the confidential relations are shown, unless the attorney properly explains his conduct. The defendant in this case, Frias, has failed to make that explanation required of him, and the plaintiff is entitled to the relief prayed for in the complaint.

[4] As to the defendant's contention that the complaint fails to state a cause of action, I am of the opinion there is sufficient to put the defendant upon his proof. In People v. O'Brien, 209 N. Y. 366, 103 N. E. 710, cited upon the defendant's brief, it was held that the mere allegations of fraud or conspiracy are of no value as stating a cause of action, yet an attempt to defraud can be inferred from such complaint. If it be true that where the relation of attorney and client exists, as in this case, it is not necessary to prove actual fraud to warrant a court of equity in intervening, and where the complaint alleges such relationship, and instruments were executed by reason of such condition, the complaint sufficiently states a cause of action; therefore the objection to the complaint in this action must be overruled, and the motion to dismiss denied.

[5, 6] The defendant Frias having admitted that he was the owner of the defendant Latin-American Contracting & Improvement Company, the corporation was a proper party. Nor was it necessary, as contended by the defendant, to bring in any other parties. The bonds and stock having been issued, the railroad company is not a necessary party.

The counterclaim interposed herein is dismissed. Judgment for the plaintiff. Submit findings and decree in accordance with these views.